IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

FAITH OLIVIA KELLER

    Plaintiff,                                            CASE NO.:

v.

FLORIDA DEPARTMENT OF HIGHWAY
SAFETY AND MOTOR VEHICLES and
DAVE KERNER, in his official capacity
as Executive Director of the Florida Department
of Highway Safety and Motor Vehicles

    Defendants.
_____/

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

COMES NOW, Plaintiff, FAITH OLIVIA KELLER, by and through her undersigned counsel, sues the Defendants, FLORIDA DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES ("FLHSMV"), and DAVE KERNER, in his official capacity as Executive Director of the Florida Department of Highway Safety and Motor Vehicles (collectively "Defendants") and states as follows:

**JURISDICTIONAL ALLEGATIONS**

1) The Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343 for the Plaintiff's claims under Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 CFR Part 35 (hereinafter, the "ADA") and § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701 et seq. (hereinafter, the "Rehabilitation Act" or "RA").

2) Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) because (b) a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred and are occurring within this judicial district.

3) Plaintiff Faith Olivia Keller is an individual with disabilities residing in Leon County, Florida, and is *sui juris*. She is qualified to participate in and benefit from the programs and services of the State of Florida.

4) Defendant, Florida Department of Highway Safety and Motor Vehicles ("FLHSMV"), is a public entity within the meaning of 42 U.S.C. § 12131(1) and receives federal financial assistance within the meaning of 29 U.S.C. § 794(b).

5) Defendant, Dave Kerner is the Executive Director of the FLHSMV and is sued in his official capacity for injunctive and declaratory relief. Kerner, in his official capacity, is responsible for FLHSMV's actions or omissions to act. Collectively, Dave Kerner and the FLHSMV will be referred to as FLHSMV.

6) FLHSMV receives Federal Financial Assistance and is therefore subject to the requirements of the Rehabilitation Act.

**GENERAL ALLEGATIONS**

7) FLHSMV is the State of Florida agency responsible for administering the disabled persons parking permit program established under § 320.048, Fla. Stat., and has issued implementing regulations found in Chapter 15C of the Florida Administrative Code.

8) In doing so, FLHSMV oversees statewide implementation, sets procedural and technical standards, designs and distributes the application forms for such permits, issues the placards,

and ensures that people with disabilities are able to park in spaces mandated by federal, state and local laws and ordinances.

9) The issuance of such placards ensures compliance with the minimum requirements of accessibility laws in all places, public and private, across the state of Florida as follows:

   a) The Americans with Disabilities Act (ADA) and implementing regulations establish minimum numerical and dimensional standards for accessible parking in both public accommodations and in parking structures operated by Florida as well as local municipalities. Under the 2010 ADA Standards for Accessible Design, 28 C.F.R. pt. 36 App. D § 208.2, each parking facility must provide accessible spaces as follows:

      i) 1 to 25 total spaces → 1 accessible space;

      ii) 26 to 50 → 2 spaces;

      iii) 51 to 75 → 3 spaces;

      iv) 76 to 100 → 4 spaces;

      v) 101 to 150 → 5 spaces;

      vi) 151 to 200 → 6 spaces;

      vii) 201 to 300 → 7 spaces;

      viii) 301 to 400 → 8 spaces;

      ix) 401 to 500 → 9 spaces;

      x) 501 to 1,000 → 2 percent of total spaces; and

      xi) over 1,000 → 20 spaces plus 1 for each 100 over 1,000.

   b) In addition to parking in lots and other structures, the requirements for on-street parking include one accessible space for each 150 metered on-street spaces provided by a state

agency or political subdivision, § 553.5041(4)(b), Fla. Stat. Federal accessibility guidelines require a minimum of approximately four percent of parking on metered streets. Table R211, Accessibility Guidelines for Pedestrian Facilities in the Public Right-of-Way (PROWAG), 36 C.F.R. pt. 1190 (App. B&D); final rule published at 88 Fed.Reg. 61470 (Sept 7, 2023).

c) Federally owned, leased or financed buildings and structures are required to have accessible parking spaces pursuant to the Uniform Federal Accessibility Standards (UFAS), 41 C.F.R. pt. 101-19.6 App. A § 4.6.2, which requires at least one accessible space for each 25 spaces up to 100 spaces, and thereafter one additional space for each additional 50 spaces up to 1,000, or 2 percent of the total, whichever is greater, with accessible routes provided per UFAS § 4.3.

d) Under the Fair Housing Accessibility Guidelines (FHAAG), 24 C.F.R. pt. 100 App. A § 2.6, parking serving covered multifamily dwellings must include at least 2 percent accessible spaces, and at least one accessible space for each dwelling unit designed for persons with mobility impairments (§ 2.23), located on an accessible route (§ 2.23(2)).

e) The Florida Accessibility Code for Building Construction, incorporated into the Florida Building Code, mirrors the federal scoping standards and requires that parking facilities provide accessible spaces in accordance with § 208.2, 208.2.3.2, and 233.2.

f) Furthermore, most counties, like Leon County, require accessible spaces in their codes of ordinances. For example, the Leon County Code of Laws, § 10-7.546, requires off-street parking areas open to the public to include properly marked accessible parking spaces consistent with Fla. Stat. §§ 316.1955–316.1957 and the Florida Building Code, and

    Leon County Code § 12-5 prohibits parking in designated accessible spaces without a valid permit.

10) As a result of issuing these placards, the FLHSMV ensures that the spaces are reserved for those with a qualifying disability pursuant to federal law, and Florida Law requires enforcement of the limitations though fines and penalties as set forth in § 316.1955 and § 316.1957, Florida Statutes.

11) Federal and state law set the minimum number of required spaces for persons with qualified disabilities, but the need for such spaces far outstrips the number of spaces provided.

12) Upon information and belief, more than 1.3 million Floridians currently have permanent parking permits issued because of a disability.  This is out of approximately 18.5 million drivers. This does not include those who pay for and are issued permits for a temporary disability.  As such, in Florida, at least seven percent of all vehicles have a disability placard.

13) In 2025, the Florida Legislature enacted Section 320.0849, Florida Statutes, through Senate Bill 462 (companion House Bill 567), signed by the Governor on June 19, 2025, and effective July 1, 2025.

14) Section 320.0849 authorizes the issuance of "Expectant Mother Parking Permits" allowing pregnant individuals to use parking spaces designated for persons with disabilities.

15) Unlike § 320.0848, Florida Statutes, which requires a physician's certification of a qualifying mobility impairment meeting specific criteria, the expectant-mother provision requires only certification of pregnancy and authorizes use of the temporary disabled placard for up to one year.

16) During legislative debate, Representative Fiona McFarland stated that pregnancy "is not a disability" and that she wanted to be able to "park up front" (House Economic Infrastructure Subcommittee, Mar. 25, 2025, The Florida Channel, at ~16:00).  The legislative intent to use federally required parking spaces for people with disabilities was evident in the very limited discussion relating to the bill, as follows:

> **Rep. Skidmore;**
> Just tease out a little bit of the disabled parking situation. I'm sensitive to expectant mothers being considered disabled. Is there a new parking spot that we will require with a new permit?
>
> **Representative McFarland:**
>
> Thank you, Mr. Chair, and thank you, Representative Skidmore. This is, perhaps, obviously my favorite part of the bill. As someone who was pregnant in the Florida hot summer, I struggled as I sweat and waddled across a parking lot, nine months pregnant in September, to get to where I needed to go, and walked past all of these handicapped spots that were vacant. And rather than complain about a problem without a solution, I realized that I had it within my power to help women like me not have to walk uncomfortably for such a long distance. So here's what we landed on.
>
> When a woman is pregnant, she just gets a letter from her doctor and then brings that doctor to the highway safety motor vehicle or tax collector, and the letter just says, "Representative McFarland is pregnant," and then you can get a placard for up to a year after that letter. Brilliant. I personally would've done it maybe six months into my pregnancy so I could have that parking spot for a little bit longer as I dealt with strollers and newborns and getting all the gear out of a car. That's my motivation for doing so and Rep Skidmore, you asked about the disability. I mean, I feel very strongly that pregnancy is not a disability. I just want to be able to park up front.
>
> **Chair LaMarca:**
> Any other questions about rock star parking?

17) The Florida Department of Highway Safety and Motor Vehicles implemented the statute via Bulletin RS-TL25-020 (June 26, 2025), revising Procedure RS-38 and creating Form HSMV 83040.

18) According to the Florida Legislature, there are approximately 225,000 live births per year. As such, there could be at least a twenty percent increase in the number of placards issued that are eligible to use parking spaces for people with disabilities.

**Effect of the New Law and Loss of Available Accessible Parking to Plaintiff Keller**

19) Plaintiff, Faith Olivia Keller, is a resident of Florida who lives in Leon County with her husband. She is forty-eight years old and was born with upper bilateral amelia, scoliosis, and a right leg length discrepancy. Ms. Keller serves as the Public Policy Manager for a national nonprofit organization.

20) She has experienced significant nerve damage since a 1999 knee replacement, which resulted in loss of function in her right foot. Throughout her childhood, Ms. Keller spent considerable time at Shriner's Hospital undergoing surgeries and treatments to address her physical disabilities. These complications led to her current use of a power wheelchair and a modified minivan with a right-side ramp for mobility.

21) Ms. Keller can only park in van accessible disabled parking spaces with access aisles, as other spaces do not provide the clearance she needs to deploy her ramp and enter or exit her vehicle. Since 2000, she has relied on this vehicle to maintain her independence and participate in daily activities. She finds that parking in any other type of space is impossible due to her mobility equipment and needs.

22) Before the statute change allowing expectant mothers to use disabled parking, Ms. Keller already faced significant challenges securing accessible parking. The limited number of suitable spaces required her to devote additional time to finding parking and often led to anxiety about her ability to keep appointments. For example, when working near the state Capitol, she often had to arrive two to three hours early, despite living less than three miles away, and sometimes circled the complex for over thirty minutes to locate an available van accessible parking space.

23) If Ms. Keller cannot park in a van accessible disabled space, she is unable to exit her vehicle, preventing her from attending work functions, medical appointments, and other necessary activities. This limitation affects her ability to shop for necessities, participate in social events, and engage with the community. The constant uncertainty and extra planning required for parking have a detrimental impact on her physical, mental, and emotional well-being.

24) The inclusion of expectant mothers in disabled parking spaces has further exacerbated these challenges, reducing the likelihood that Ms. Keller will find accessible parking when needed. She must also compete with a growing number of vehicles displaying red temporary parking placards, making it difficult to determine who is parking lawfully. This ambiguity adds stress and increases her fear of missing important obligations and opportunities.

25) Timely attendance at conferences, in-person panels, meetings, and flights are essential to Ms. Keller's professional and personal life. Missing or being late to these events can jeopardize her reputation, professional relationships, and future job prospects. For example, she must often arrive at airports four to six hours before her flight and has encountered strict medical

appointment policies, risking missed care due to parking scarcity, as happened on October 21, 2025, at Tallahassee Memorial Hospital.

26) Because she is missing her arms and has reduced skin surface area, Ms. Keller is at an increased risk of overheating, especially during peak parking times in the Summer. Proximity to building entrances is also vital in inclement weather, as she cannot hold an umbrella and is more susceptible to illness due to a compromised immune system. Rain exposure can irreparably damage her power wheelchair, and replacement through Florida's Vocational Rehabilitation program is only available every five years, leaving her vulnerable to significant costs and potential isolation.

27) Overall, the reduction in available van accessible disabled parking, and an increase in competition for these spaces severely limits Ms. Keller's ability to participate in work, medical care, social, and community activities. These barriers heighten her anxiety and isolation, diminishing her quality of life and threatening her independence. She experiences ongoing fear that she will not be able to fulfill her responsibilities or access essential services due to these parking challenges.

28) Plaintiff has retained the Nova Southeastern University Disability Inclusion and Advocacy Law Clinic to represent her in this cause.

### **COUNT I – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

29) Plaintiff realleges Paragraphs 1 through 28 are realleged and incorporated as if fully set forth herein.

30) Since July 1, 2025, FLHSMV has implemented Section 320.0849, Florida Statutes, and issues placards for those who are pregnant under this statute, thereby permitting people without

disabilities to use parking spaces dedicated by federal law for the use of qualified people with disabilities.

31) By issuing both disability placards and pregnancy placards, Defendant controls the use of designated parking spaces, and thus provides the services, program, or activity of the use of the accessible parking spaces in the state of Florida.

32) Under Title II of the Americans with Disabilities Act, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

33) By permitting people who are pregnant to use a parking permit to park in designated disability parking spaces excludes or otherwise makes the program of accessible parking required by federal law and regulation unavailable to Plaintiff and any other person with a qualified disability.

34) Pursuant to 42 U.S.C. § 12188, this Court is vested with the authority to grant Plaintiff the injunctive relief requested herein.

**WHEREFORE**, Plaintiff demands judgment against FLHSMV and Dave Kerner, and requests the following injunctive and declaratory relief:

   A. Declaring that Defendants' issuance and enforcement of Expectant Mother Parking Permits violates Title II of the Americans with Disabilities Act;

   B. Issuing a permanent injunction prohibiting Defendants, their agents, employees, and successors from issuing, distributing, or recognizing placards authorizing non-disabled persons to occupy parking spaces required by federal and state accessibility law;

*Nova Southeastern University Disability Inclusion and Advocacy Law Clinic*

C. Issuing a permanent injunction requiring Defendants, their agents, employees, and successors do rescind and invalidate all currently existing Expectant Mother Parking Permits;

D. Order Defendants to adopt and implement policies and training ensuring compliance with 42 U.S.C. § 12132, 28 C.F.R. pt. 35;

E. Award Plaintiff her reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12205;

F. Retaining jurisdiction of this case until the Department has fully complied with the orders of this Court; and

G. Grant such other and further relief as this Court deems just and proper.

## COUNT II – VIOLATION OF THE REHABILITATION ACT

35) Paragraphs 1 through 28 are realleged and incorporated as if fully set forth herein.

36) Pursuant to 42 U.S.C. § 2000d-7(a)(1), "[a] state shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . . , or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance."

37) Section 2000d-7 unambiguously conditions the receipt of federal funds on the waiver of Eleventh Amendment immunity to claims under section 504 of the Rehabilitation Act.

38) In 2025, Florida Highway Safety and Motor Vehicles received over thirty million dollars in federal financial assistance. Pursuant to Florida Statute § 20.241, such funding is placed in the "Federal Grants Trust Fund; Department of Highway Safety and Motor Vehicles:"

> (1) The Federal Grants Trust Fund is created within the Department of Highway Safety and Motor Vehicles.
> (2) The trust fund is established for use as a depository for funds to be used for allowable grant activities funded by restricted program revenues from federal

sources. Moneys to be credited to the trust fund shall consist of grants and funding from the Federal Government, interest earnings, and cash advances from other trust funds.

39) Such funds can be applied to ADA compliance and accessibility improvements if included in allowable grant activities. Furthermore, grants from the Federal Department of Transportation, such as NHTSA Highway Safety Grants (Sections 402 & 405) and FMCSA Motor Carrier Safety Assistance Program (MCSAP), include nondiscrimination obligations under ADA and Section 504.

40) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, prohibits discrimination against people with disabilities by recipients of federal funding, and provides that "no otherwise qualified handicapped individual … shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance."

41) Plaintiff is otherwise qualified under the Rehabilitation Act because she meets the essential eligibility requirements to participate in the Department's services, programs, and activities.

42) By reducing the number of federally required disability parking spaces, FLHSMV has violated 49 C.F.R. § 27.7(a) by excluding qualified persons with disabilities from participation in, denied them the benefits of, and subjected them to discrimination under a program or activity receiving Federal financial assistance administered by the Department of Transportation.

43) By reducing the number of federally required disability parking spaces, FLHSMV has violated 49 C.F.R. § 27.7(b)(1)(i) by denying qualified individuals with disabilities the opportunity to participate in or benefit from transportation-related services and facilities on an equal basis with individuals without disabilities.

44) By decreasing the availability of federally required disability parking spaces, FLHSMV has violated 49 C.F.R. § 27.7(b)(1)(ii) by affording qualified individuals with disabilities an opportunity to participate in or benefit from transportation-related programs and services that are not substantially equal to that afforded to non-disabled individuals.

45) By diminishing the number of federally required disability parking spaces, FLHSMV has violated 49 C.F.R. § 27.7(b)(1)(iii) by providing programs and services that are less effective in affording qualified individuals with disabilities equal opportunity to obtain the same result, benefit, or level of achievement as those without disabilities.

46) The reduction of accessible parking spaces violates 49 C.F.R. § 27.7(b)(1)(vii) by limiting the enjoyment of rights, privileges, advantages, and opportunities that are otherwise available to individuals without disabilities.

47) The reduced number of disability parking spaces violates 49 C.F.R. § 27.7(b)(2) by failing to provide equally effective access to transportation programs and services, thereby denying individuals with disabilities the opportunity to achieve the same results or benefits in the most integrated setting reasonably achievable.

48) The reduction in federally required disability parking spaces violates 49 C.F.R. § 27.7(b)(3) by denying qualified individuals with disabilities the opportunity to participate in integrated transportation programs and activities.

49) The criteria or methods used to reduce disability parking spaces violates 49 C.F.R. § 27.7(b)(4)(i) – (iii) by having the effect of subjecting qualified individuals with disabilities to discrimination, defeating the objectives of the transportation program and federal law guaranteeing access to the community.

50) Because they are a recipient of federal financial assistance, the Department is subject to the requirements of the Rehabilitation Act, and it's implementing regulations.

51) FLHSMV actions, or omissions to act, described above violated Plaintiff's rights under the Rehabilitation Act by discriminating against her on the basis of a disability.

52) FLHSMV's discriminatory conduct against Plaintiff was deliberate and intentional, and/or in reckless disregard of Plaintiff's rights.

**WHEREFORE**, Plaintiff demands judgment against FLHSMV and requests that this Court enter an Order:

A. Declaring that Defendants' issuance and enforcement of expectant-mother parking placards violates Section 504 of the Rehabilitation Act;

B. Issuing a permanent injunction prohibiting Defendants, their agents, employees, and successors from issuing, distributing, or recognizing placards authorizing non-disabled persons to occupy parking spaces required by federal and state accessibility law;

C. Issuing a permanent injunction requiring Defendants, their agents, employees, and successors to rescind and invalidate all currently existing Expectant Mother Parking Permits;

D. Order Defendants to adopt and implement policies and training ensuring compliance with 29 U.S.C. § 794 and 49 C.F.R. pt. 27;

E. Award Plaintiff her reasonable attorneys' fees and costs pursuant to and 29 U.S.C. § 794a;

F. Retaining jurisdiction of this case until the Department has fully complied with the orders of this Court; and

G. Grant such other and further relief as this Court deems just and proper.

Dated this **28th Day of October 2025.**

                                                    Respectfully submitted,

                                                   By: _/s/ Matthew W. Dietz_
                                                 **MATTHEW W. DIETZ, ESQ.**
                                                 Florida Bar No.: 0084905
                                                 Disability Inclusion and Advocacy Law Clinic Nova Southeastern University
                                                 Shepard Broad College of Law
                                                 3300 S. University Drive,
                                                 Fort Lauderdale, FL 3328
                                                 Clinic: (954) 262 – 6138
                                                 mdietz@nova.edu