IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**FAITH OLIVIA KELLER,**

    **Plaintiff,**

v.                                                                 Case No. 4:25-cv-450-AW-MAF

**FLORIDA DEPARTMENT OF
HIGHWAY SAFETY AND MOTOR
VEHICLES and DAVE KERNER, in his
official capacity as Executive Director of
the Florida Department of Highway
Safety and Motor Vehicles,**

    **Defendants.**

_____/

## ORDER GRANTING MOTION TO DISMISS

Plaintiff Faith Olivia Keller is a disabled Floridian. She uses a motorized wheelchair and drives a modified minivan that has a wheelchair ramp. An ordinary parking spot provides inadequate space to deploy the ramp, so Keller relies on parking spots reserved for those with disabilities.

Last year, the Florida Legislature enacted a statute authorizing the issuance of "Expectant Mother Parking Permits." *See* Fla. Stat. § 320.0849. These permits allow pregnant women and new mothers to use accessible parking spaces ordinarily reserved for those with disabilities. In Keller's view, this new law violates the Americans with Disabilities Act and the Rehabilitation Act because it necessarily reduces the number of accessible spots available to disabled persons.

1

Keller sued the Florida agency tasked with issuing disabled parking permits—the Florida Department of Highway Safety and Motor Vehicles—and its Executive Director. (For simplicity, I will refer to both Defendants as the Department.) She seeks an order enjoining the Department from enforcing the law and from issuing permits to pregnant women or new mothers who are not disabled.

The Department moved to dismiss, arguing Keller lacks standing and has not stated a claim for relief. Having carefully considered the parties' arguments, I conclude Keller has not shown any injury fairly traceable to the Department. I must therefore dismiss for lack of jurisdiction. Accordingly, I do not reach the Department's Rule 12(b)(6) arguments or otherwise consider the merits.

## I.

Federal courts have limited jurisdiction and "are empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) (cleaned up). "Because standing to sue implicates jurisdiction, a court must satisfy itself that the plaintiff has standing before proceeding to consider the merits of her claim, no matter how weighty or interesting." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (en banc).

To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is

likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). A plaintiff must support each element of standing in the same way she must show other essential facts, "*i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. At this stage, Keller "must clearly allege facts demonstrating each element." *Spokeo, Inc.*, 578 U.S. at 338 (cleaned up). And at this stage, I accept all well-pleaded factual allegations as true. *Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*, 26 F.4th 1235, 1240 (11th Cir. 2022).

## II.

Under state and federal law, parking areas must have certain numbers of accessible parking spots. The number of required accessible spots is generally tied to the number of total spaces. There is no guarantee, of course, that there will always be sufficient spots to accommodate everyone with a permit. And even before Florida enacted the challenged law, Keller experienced parking scarcity. She often had to devote significant time to finding accessible parking. If she could not find a spot, she was out of luck.

Shortly after the new law's June 2025 enactment, the Department began issuing expectant-mother parking permits. Keller says that change further exacerbates the challenges she already faced in finding accessible parking: She now

must compete against more permit holders. The reduction in accessible parking limits Keller's ability to participate in society, increases her fear and anxiety, and presumably increases the amount of time she must devote to search for parking.

### III.

The Department's principal argument is that Keller lacks standing because any connection between her alleged harm and the new law is speculative. ECF No. 10 at 5. In response, Keller all but ignores the Article III issue, focusing instead on the merits and the ADA's "remedial purposes." ECF No. 12 at 12; *see also, e.g.*, *id.* at 25 (arguing "disparate impact claims are recognized under Title II" in response to the Department's argument that Keller "cannot demonstrate any injury traceable to Section 320.0849").

I will assume for now that Keller has alleged a concrete injury. I accept that she has experienced accessible parking scarcity in the past and will likely face it in the future. And I accept that, between the additional time she devotes to finding accessible parking spaces, the associated anxiety with missing obligations, and the exclusion she experiences from society because of her disability, she has alleged enough to show a cognizable injury. *See Walters v. Fast AC, LLC*, 60 F.4th 642, 648 (11th Cir. 2023) (concluding plaintiff's "wasted time" and "emotional distress" each constitute "a concrete injury in fact"); *see also id.* at 649 ("[I]t would make little sense, and disrupt longstanding conceptions of Article III, to conclude that a plaintiff

4

who suffers a *concrete harm* but not *because of* the defendant's statutory violation, has really suffered no concrete harm at all."). Keller's problem, though, is that she has not linked any imminent parking scarcity to the Department's issuing permits to expectant mothers.

The fair-traceability requirement "examines the causal connection between the assertedly unlawful conduct and the alleged injury." *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984). It is not an exacting standard, but neither is it "toothless." *Walters*, 60 F.4th at 650. Keller "must at least demonstrate *factual* causation between [her] injuries and the [Department's actions]." *Id.* The links in Keller's chain of causation must not be "too speculative or too attenuated." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024). And "when (as here) a plaintiff challenges the government's unlawful regulation (or lack of regulation) of *someone else*, standing is not precluded, but it is ordinarily substantially more difficult to establish." *Id.* at 382 (cleaned up).

The Supreme Court recently addressed the fair-traceability requirement. In *Alliance for Hippocratic Medicine*, doctors had sued the FDA seeking to enjoin relaxed regulatory requirements for mifepristone, an abortion drug. 602 U.S. at 372-74. The doctors themselves did not prescribe or use mifepristone, but they feared the relaxed regulatory requirements would cause pregnant women to suffer complications from mifepristone and require emergency abortions from them. Those

5

complications and emergency abortions, the doctors argued, would result in "various monetary and related injuries" like diverted resources, increased risk of lawsuits from treated mifepristone patients, and potentially increased insurance costs. *Id.* at 390.[1] But the link between those injuries and the FDA's regulatory actions was "highly speculative." *Id.* at 390-91. The doctors could not demonstrate, for example, the FDA's regulatory actions had "both caused an increase in the number of pregnant women seeking treatment from the plaintiff doctors *and* caused a resulting diversion of the doctors' time and resources from other patients." *Id.* (emphasis in original). They also could not identify "any instances in the past where they have been sued or required to pay higher insurance costs because they have treated pregnant women suffering mifepristone complications," or any reason why "the future [would] be different." *Id.* at 391. The doctors' "chain of causation is simply too attenuated," the Court observed, and there "would be no principled way to cabin" the rule the doctors advocated. *Id.* 391-92. "Firefighters could sue to object to relaxed building codes that increase fire risks. Police officers could sue to challenge a government decision to legalize certain activities that are associated with increased crime. Teachers in

---

[1] The doctors also argued emergency abortions would violate their conscience. *All. for Hippocratic Med.*, 602 U.S. at 387. That injury, albeit a concrete one, was not fairly traceable to the FDA for reasons not relevant here. *Id.* at 387-90 ("In short, given the broad and comprehensive conscience protections guaranteed by federal law, the plaintiffs have not shown—and cannot show—that FDA's actions will cause them to suffer any conscience injury.").

border states could sue to challenge allegedly lax immigration policies that lead to overcrowded classrooms." *Id.* at 392.

Enter Keller. Keller's trouble with parking scarcity is not new. Even before the rule change, "she often had to arrive two to three hours early" before work "and sometimes circled the complex for over thirty minutes to locate an available van accessible parking space." Compl. ¶ 22. But this lawsuit is about the new law. And here, neither the new law nor the Department's actions in implementing it will cause Keller's harm unless each of the following materialize: (1) A woman will apply for and receive an expectant-mother parking permit; (2) she would have been ineligible for—and not have obtained—any disabled parking permit absent the law; (3) she will park in the same lot Keller seeks to park at the same time; and (4) all accessible parking is taken when Keller arrives.

Keller alleges no concrete facts suggesting this causal chain has been satisfied in the past or will be satisfied in the future. She does point to an incident involving her missing a medical appointment "due to parking scarcity." Compl. ¶ 25. But she does not allege that incident involved an expectant mother or an expectant-mother permit.[2] She also points to Florida's rate of approximately 225,000 annual live births,

---

[2] Even if she could, that alone would not confer standing. Because Keller seeks prospective relief, she must establish "a sufficient likelihood of future injury" fairly traceable to the Department. *All. for Hippocratic Med.*, 602 U.S. at 381. Here, that means she must establish that she will repeatedly face parking scarcity due to

7

but that allegation leaves unaddressed whether those expectant mothers will apply for, receive, and use the permit in such a way that will deprive Keller of convenient accessible parking (that is, by parking in the parking lots Keller frequents, at the times of day she frequents, and on the days she frequents them). *See All. for Hippocratic Med.*, 602 U.S. at 383 (noting that when a litigant's injury relies on choices made by independent third parties, "the plaintiff must show that the third parties will likely react in predictable ways that in turn will likely injure the plaintiffs") (cleaned up).

Like the doctors in *Alliance for Hippocratic Medicine*, Keller has not shown the requisite chain of causation. She has not demonstrated the Department's issuance of expectant-mother parking permits will deprive her of an accessible parking spot at any particular time. If she does find all spots full in the future, it could be for any number of reasons: the spots could be full because of disabled persons with appropriate permits; they could be full because of people with no permits at all who are parked illegally; they could be full because of misuse of disability permits; they could be full because of pregnant women with expectant-mother permits but who would have qualified for a regular disability permit. Keller, in short, assumes that if the Department stops issuing expectant-mother permits, drivers will leave spots open

---

expectant-mother parking permits. A single past instance, without more, does not suffice. *See generally City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

for her. Perhaps her speculation is correct, but speculation cannot suffice for purposes of Article III standing. *See All. for Hippocratic Med.*, 602 U.S. at 383 (noting that "plaintiffs attempting to show causation generally cannot rely on speculation about the unfettered choices made by independent actors not before the courts" (cleaned up)).

Because Keller has not alleged facts demonstrating her injury is fairly traceable to the Department's conduct, she has not established standing. That means the court lacks jurisdiction and must dismiss.

The Department's motion (ECF No. 10) is GRANTED, and the complaint is DISMISSED for lack of jurisdiction. Although it appears unlikely that Keller can allege additional facts to cure the complaint's deficiencies, the court will grant leave to amend. Keller may file an amended complaint within 14 days. Absent a timely amendment, judgment will issue consistent with this order.

SO ORDERED on January 23, 2026.

s/ *Allen Winsor*  
Chief United States District Judge