**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

UNITED SPINAL ASSOCIATION;
FAITH OLIVIA KELLER; KIMBERLY HARRISON;
and LAURA ABBOTT dba LAURA J. ARTISTRY,

     *Plaintiffs*,

v.                              Case No.: 4:25-cv-00450-AW-MAF

FLORIDA DEPARTMENT OF HIGHWAY
SAFETY AND MOTOR VEHICLES and
DAVE KERNER, in his official capacity
as Executive Director of the Florida Department
of Highway Safety and Motor Vehicles,

     *Defendants*.

_____/

## DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Defendants, the Florida Department of Highway Safety and Motor Vehicles and Dave Kerner, in his official capacity as Executive Director of the Florida Department of Highway Safety and Motor Vehicles (collectively, "the Department"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectfully move to dismiss the First Amended Complaint (DE 30), and in support state:

**INTRODUCTION**

The original Complaint in this action contained only one Plaintiff – Faith Olivia Keller (hereinafter "Keller") – and she alleged two counts:  Count I for violation of the ADA and Count II for violation of the Rehabilitation Act.  (DE 1). This Court previously granted Defendants' Motion to Dismiss that original Complaint because there were insufficient allegations to establish Article III standing, writing: "Although it appears unlikely that Keller can allege additional facts to cure the complaint's deficiencies, the court will grant leave to amend."  (DE 15, pg. 9).

Since, Plaintiff added three more co-Plaintiffs, and the Plaintiffs then filed a First Amended Complaint that added new factual allegations, and changed one of the Counts – Count II (which now seeks declaratory judgment on the basis of preemption and equity) in an effort to cure the deficiencies in the original Complaint. (DE 30).

**BACKGROUND AND NEW FACTUAL ALLEGATIONS**–

Plaintiff challenges section 320.0849, Florida Statutes (2025), which provides that "the [D]epartment [of Highway Safety and Motor Vehicles] or its authorized agents shall, upon application, issue an expectant mother parking permit placard or decal to an expectant mother." § 320.0849(1)(a). At issue in this case is section 320.0849(3), which states that "an expectant mother who is issued an expectant

mother parking permit under this section may park a motor vehicle in a parking space designated for persons who have disabilities."

To cure the deficiencies that caused this Court to dismiss this action with leave to amend, Plaintiffs added new factual allegations.  Defendants will focus on these new facts:

**Plaintiff Keller.**

The primary new fact about Plaintiff Keller is that she "has seen a parked  car with an Expectant Mother Parking Permit at her doctor's office."  (DE 30, at 21). No further details are given about this observation (no date, no indication whether that vehicle was parked in a handicapped parking spot, no indication whether Keller had difficulty finding another spot due that that vehicle).  (DE 30, at 20-21).

**Plaintiff Harrison.**

Plaintiff Kimberly Sue Harrison (hereinafter "Harrison") is severely disabled and also needs Van Accessible Parking – she has similar needs and concerns as Ms. Keller. (DE 30, 21-28).  In an attempt to cure the deficiencies in Keller's allegations, Harrison describes an incident that allegedly occurred in late December of 2025 (Defendants' prior motion to dismiss was filed in late 2025 – DE 12) at the St. Johns County Ocean Pier and Courts Park, when her husband was driving their van and one friend accompanied them.  Harrison alleges that her husband could not park in the Van accessible parking spot – or the spot next to it – although there was another

handicap parking spot available (with vehicles parked on either side, and it not being a wide van-accessible spot). Instead, Harrison had to be dropped her off in the driving area of the parking lot first, and only then could the vehicle be parked in the available handicap spot. Harrison also claims that the Van-accessible spot was taken by a Toyota from which a young mother with an infant exited. Harrison claims that the woman had "no apparent mobility or vision impairment" – although she recognizes that many people with not such apparent mobility or vision impairment do qualify for disability (see DE 30, at 15, n. 3). Rather than Harrison or one of the two people accompanying Harrison asking the lady if she would kindly trade disability spots – so Harrison's van could be parked in the only van-accessible spot (due to Harrison's needs for a Van space and her severe disability), Harrison herself started an investigation.

Harrison observed a red temporary parking placard hanging from the Toyota's rearview mirror. She took a picture of the placard. She asked the woman if the placard was "one of the new pregnant mothers permits?" The woman said it was, that her doctor offered it to her, and that she had her baby the previous month. She claims that "because the woman was parked in the van-accessible disability parking space available, the only remaining disability parking space was one without adequate access aisle" – Harrison was "forced to unload and transfer in the driving lane of the parking lot" before her husband parked in the available handicap parking

4

spot. Harrison does not allege asking the woman any questions about her health, pregnancy difficulties, or any disability that would qualify her for a temporary permit aside from just being pregnant and having a baby. No questions were seemingly asked about how often the lady visits the park. However, Harrison claims that she visits that park often and claims that she is likely to again encounter this woman or another Expectant Mother Parking Permit holder at the Park in the future.

**Plaintiff Abbott.**

Plaintiff Laura Abbott (hereinafter "Abbott") is not disabled, but owns a cosmetologist business in Tallahassee, and a few of her clients are disabled and need to use disability parking. Abbott moved her business to a new location in October of 2025 – and that location (whose owner is not identified) has one van-accessible disability parking space in front of her salon.

Earlier in the Complaint, Plaintiffs misstate the law and claim that under Section 316.1955(1)(a) – the "owner or lessee of the space may have the vehicle towed." Section 316.1955(1)(a) allows the "owner or lessor" to act: "(a) Whenever a law enforcement officer, a parking enforcement specialist, or the owner or lessee of the space finds a vehicle in violation of this subsection, that officer, owner, or lessor shall have the vehicle in violation removed to any lawful parking space or facility or require the operator or other person in charge of the vehicle immediately to remove the unauthorized vehicle from the parking space."

Regardless, Ms. Abbott's allegations do not establish what specific right she has towards the handicapped parking spot she mentions to be near her business. The allegations regarding Ms. Abbott are that she has three clients who need disability parking and may in the future have more such clients. There are no allegations of any specific difficulty her clients encountered, no allegations that a person with a pregnancy placard was parked in the only Van-accessible parking when one of those clients was trying to park there. Rather, Ms. Abbott's allegations are as generic as Ms. Keller's original allegations – suggesting that the issuance of pregnancy placards conflicts with the ADA and that she can no longer assure clients that handicap parking will be available simply because of the existence of this new right in Florida. In essence, Ms. Abbott claims that she is harmed because she can no longer "reserve" safe and accessible parking for her disabled customers.

**Plaintiff United Spinal Association.**

Plaintiff United Spinal Association (hereinafter "United") claims that its members are being harmed, and it is being harmed, as a result of Florida's pregnancy placard law (Section 320.0849). United makes similar allegations as Ms. Keller did in the original complaint – noting that disabled members who need disability parking in Florida already struggle to find parking in their communities, and that the new law further dilutes the available parking – making it even more difficult for people with disability to park. United claims that the issuance of one-year Expectant

Mother Parking Permits to thousands of Floridians – many of whom are not disabled – is "causing and [is] likely to cause . . . additional delay, inconvenience, isolation, frustration, anxiety, embarrassment, wasted time . . .."  (DE 30, at 14).  United cites as its only concrete example the Harrison late 2025 incident/investigation described above.  (Id.).

United claims injury to itself as well, claiming that as a result of the passage of the new law, United "has been forced to divert its scarce resources to defend the rights and needs of its members and constituents and to protect them from unlawful injury."  United staff are having to respond to "emails and phone calls from members and constituents with concerns about the new law and its impact" on its members.  United claims it has received "reports of how the pregnancy permits are interfering with the ability of members and constituents to park in accessible spaces in Florida" – but no concrete example is mentioned except for the Harrison incident.  Generally, United has chosen to fight this law (and similar laws being considered in other states) and has devoted resources to this mission – and away from other missions such as expanding the overall number of required handicap parking spaces.  One example is given – one staff member has been unable to work on several priority issues for members (including care support and wheelchair repair) – because he has had to divert a significant amount of his time and resources to responding to emails and

phone calls from people with "complaints and problems" caused by Section 320.0849.

**Grounds for Dismissal**

This Court still lacks subject matter jurisdiction as Plaintiffs speculative fears about potential parking challenges and their specific examples do not constitute an Article III injury traceable to the challenged Statute or the Defendants enforcement thereof.  Therefore, Plaintiffs lack standing to pursue their claims.  Therefore, the First Amended Complaint should be dismissed.  Additionally, Plaintiffs failed to state a claim in Counts I and II.

## LEGAL STANDARD

Under Rule 12(b)(1), a complaint must be dismissed if the court lacks subject matter jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). The burden of establishing subject matter jurisdiction lies with the plaintiff. *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1248 n. 2 (11th Cir. 2005); *see also Ishler v. Internal Revenue*, 237 F. App'x 394, 395 (11th Cir. 2007).

Moreover, a complaint may be dismissed for failure to state a claim under Rule 12(b)(6). When evaluating a motion to dismiss under Rule 12(b)(6), the question is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). Facial plausibility requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.*, and must rise "above the speculative level." *Twombly*, 550 U.S. at 555.

## ARGUMENT

### I. Plaintiffs Lack Article III Standing

Plaintiffs' allegations that she will be unable to find parking and access certain places due to section 320.0849 are completely speculative and thus insufficient to establish standing. Article III standing is a threshold issue in determining whether a federal court possesses jurisdiction. *Allen v. Sch. Bd. for Santa Rosa Cnty., Fla.*, 782 F. Supp. 2d 1304, 1315 (N.D. Fla. 2011), on reconsideration, No. 3:10CV142/MCR/CJK, 2011 WL 13112091 (N.D. Fla. May 12, 2011). To establish standing, a plaintiff must show an injury in fact and allege that the injury is both traceable to and redressable by the defendant. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1201 (11th Cir. 2021). For injunctive and declaratory relief, the injury element requires plaintiff to "show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1265 (11th Cir. 2001). The Supreme Court has stated that harms regarding speculative fears based on an uncertain chain of events is not enough to establish a concrete injury required for Article III standing. *Clapper v. Amnesty Int'l USA*, 568

9

U.S. 398, 410 (2013). Moreover, allegations of a "*possible* future injury" without any showing that the alleged harm is "certainly impending" is not enough to establish an Article III injury. *Id.* at 409 (emphasis in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)); *see also Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1338 (11th Cir. 2021).   Under the ADA, "a plaintiff lacks standing to seek injunctive relief unless he alleges facts giving rise to an inference that he will suffer future discrimination by the defendant." *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001).

Here, Plaintiff fails to allege any facts from which one could conclude that there is discrimination caused by section 320.0849. While Plaintiff discusses the difficulties she generally faces finding an open parking spaces for her modified minivan, she can only speculate about the effect of section 320.0849 on these existing difficulties, claiming only that the new statute "has further exacerbated" her parking problems by "reducing the likelihood that [she] will find accessible parking when needed, *id.* ¶ 24. Plaintiff fails to allege any facts supporting this claim. This was the same deficiency discussed in *Shotz*, where just as Plaintiff does here, the plaintiffs only discussed "past incidents." *Shotz*, 256 F.3d at 1082.

This Court already conducted an extensive analysis of the deficiencies with the allegations made by Keller in the original complaint – but the First Amended Complaint allegations did not fare better.

There are no allegations that cure the problems with Keller's prior allegations. The only new allegation as to Keller is that she saw a vehicle with a pregnancy placard parked in a handicapped spot at her doctor's office – but she does not allege whether that had any effect on her ability to park in a handicap spot, nor does she allege any facts to demonstrate that the person with that pregnancy placard would not otherwise qualify for a temporary disability card.

The Harrison incident involved an available handicap parking spot that her husband ended up using, and the person who was supposedly occupying the Van-accessible spot was right there – yet she wasn't asked whether she would trade spaces.  Furthermore, there are no allegations to support the conclusory suggestion that Harrison may come upon the same lady or others using a pregnancy placard in future visits to the park.   Finally, although Harrison questioned the lady – there are no allegations that the lady actually would not qualify for a temporary disability card (the only allegations are that she did not "seem" to have any vision or mobility issues – but Plaintiffs acknowledge that many people who qualify for disability placards do not "seem" to have such issues either).

Abbott, a non-disabled business owner, does not allege any specific instance of a person using a pregnancy placard making preventing one of her very few disabled customers from parking.  Furthermore, she does not allege having authority to remove anyone from a disability parking.

The Court cannot infer from these conclusory allegations that Plaintiffs' rights under the ADA were and are violated by the enactment of section 320.0849. *See Shotz*, 256 F.3d at 1082 (stating that standing under Title II of the ADA requires a showing that the defendant discriminated against the plaintiff in the past and is likely to do it again in the future); *see also Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005) (affirming a denial of injunctive relief under the ADA and RA because plaintiff provided no facts that the past incident was anything more than an isolated occurrence). Plaintiffs' fears about section 320.0849 are merely speculative.

Plaintiffs also fail to show that the likelihood of the Department discriminating against them in the future is "certainly impending." *See Tsao*, 986 F.3d at 1344 ("However, without specific evidence of some misuse of class members' data, a named plaintiff's burden to plausibly plead factual allegations sufficient to show that the threatened harm of future identity theft was 'certainly impending'—or that there was a 'substantial risk' of such harm—will be difficult to meet."). Just as in *Tsao*, without any allegations that there are actually pregnant women obtaining these permits and taking up disabled parking spaces that Plaintiff would likely use, she cannot establish an Article III injury.

Additionally, it is not enough for Plaintiffs to allege their belief that section 320.0849 will affect their (or their members' or customers') ability to find parking. Courts have repeatedly held that with no allegation that the harm has occurred in the

12

past *and* will likely occur in the future, there is no constitutional injury. *See Richards v. Crews*, No. 4:13-CV-30-MW/CAS, 2014 WL 988634, at *3 (N.D. Fla. Mar. 12, 2014) ("It is not sufficient to allege that at some point in the future a particular section might be used to reject a publication unfairly; Plaintiff must have already suffered constitutional injury."); *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001) ("[C]ourts have held that a plaintiff lacks standing to seek injunctive relief unless he alleges facts giving rise to an inference that he will suffer future discrimination by the defendant."). Plaintiffs have not sufficiently alleged that they (or their members or customers) suffered from parking scarcity due to section 320.0849 and that there is a substantial risk of it happening again. Instead, Plaintiffs assert the conclusory belief that they think they will experience increased difficulty in parking without any concrete example or basis that actually demonstrates their proposition.

Plaintiffs state that there *could* be an increase in placards issued based on the number of live births per year, however, this is insufficient as purely theoretical. *See Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 927 (11th Cir. 2020) ("The Supreme Court has long indicated that standing predicated on a risk of harm must be based on something more than a minor or theoretical risk[.]"). Just because there is an average number of babies born per year, that does not show that their mothers will be pregnant in Leon County, apply for a disability placard, and use the van accessible spaces where Plaintiff visits. As with the basis for standing alleged in

13

*Clapper*, Plaintiff's theory depends on various situations that are completely speculative. *See Clapper*, 568 U.S. at 410. Thus, Plaintiffs' theory is based on a "highly attenuated chain of possibilities," which only establish what could happen. *Id.*

Therefore, because the Plaintiffs fail to state a "concrete and particularized injury," they lack standing and this Court lacks subject matter jurisdiction. *See Nat'l All. for Mentally Ill, St. Johns Inc. v. Bd. of Cnty. Comm'rs of St. Johns Cnty.*, 376 F.3d 1292, 1295 (11th Cir. 2004) ("Assertions about what might happen do not establish an injury that is 'concrete and particularized.'") (quoting *Lujan* 504 U.S. at 560).

Adding an association and a business owner as plaintiffs did not resolve these issues.

Article III requires a plaintiff to have "a personal stake in the outcome of" each claim it presses. *Murthy*, 603 U.S. at 57. The plaintiff must establish "each element of standing" for each of its claims—it cannot "dispense[] [with standing] in gross." *Id.* at 58, 61. In recent years, the Supreme Court and the Eleventh Circuit have stressed that this requirement is not to be taken "lightly." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020); *Mata Chorwadi, Inc. v. City of Boynton Beach*, 66 F.4th 1259, 1264 (11th Cir. 2023) (third-party standing and the overbreadth doctrine are merely "exceptions" to "prudential limitation[s]" on

14

standing, and "do not alter the requirements of standing under Article III"); *see also Murthy*, 603 U.S. at 58; *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, at 397 (2024)(discussed extensively by this Court in the order granting motion to dismiss – DE 15); *Dep't of Educ. v. Brown*, 600 U.S. 551, 556 (2023); *California v. Texas*, 593 U.S. 659, 680 (2021); *City of S. Miami v. Governor of Fla.*, 65 F.4th 631, 634 (11th Cir. 2023); *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1295–96 (11th Cir. 2019) (*en banc*).

Here, Plaintiffs added an associational Plaintiff and a business-owner to invoke the rights of third parties (disabled members, disabled customers), so they must not only satisfy Article III but also overcome the prudential "prohibition o[n] asserting third-party rights." *Mata Chorwadi*, 66 F .4th at 1264. There are a few "limited" exceptions to the prohibition, including third-party standing, the overbreadth doctrine, and associational standing. *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004); *Mata Chorwadi*, 66 F.4th at 1264.    Third-party "standing allows litigants who challenge a statute in their own right to assert 'concomitant' rights of third parties when those third parties' rights would be violated by the enforcement of the challenged restriction against the litigant." *Mata Chorwadi*, 66 F.4th at 1265. For third-party standing, the plaintiff must show that it "has a 'close' relationship with" the third parties and that "there is a 'hindrance' to the[ir] ability to protect [their] own interest." *Kowalski*, 543 U.S. at 130. However, as discussed above,

15

Abbott's allegations are insufficient to show any violation of the ADA *vis a vis* her customers – and therefore Plaintiffs have not demonstrated circumstances where third-party standing would be appropriate. *See Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392 (1988); *Mata Chorwadi*, 66 F.4th at 1264.

Associational standing allows an organization to "enforce the rights of [its] members." *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1160 (11th Cir. 2008).   By contrast, associational standing does not require a plaintiff to separately satisfy Article III and prudential requirements. If a plaintiff invokes associational standing, it can both satisfy Article III and overcome the prudential prohibition against third-party claims by establishing that (1) its members themselves would have standing to sue, (2) "the interests it seeks to protect are germane to [its] purpose," and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions*, 600 U.S. at 199; *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 554–57 (1996).   However, as discussed above, Plaintiffs have failed to allege sufficient facts to demonstrate that any individual member would have standing to sue in his or her own behalf – as the new allegations about Keller and the allegations regarding Harrison's incident are insufficient.[1]

---

[1]  Defendants acknowledge that, on the basis of *Doe v. Stincer*, 175 F.3d 879, 885–86 (11th Cir.1999), several Florida district court judges have held that associational standing is appropriate for certain ADA cases, particularly those seeking only prospective relief.  *See Alumni Cruises, LLC v. Carnival Corp.*, 987 F. Supp. 2d 1290, 1301-02 (S.D. Fla. 2013); *Access 4 All, Inc. v. Atlantic Hotel Condominium Association*, 2005 WL 5632057

Furthermore, to have associational standing – they also must show their own injury. *See All. for Hippocratic Med.*, 602 U.S. at 393 n.5 ("[E]ven when we have allowed litigants to assert the interests of others, the litigants themselves still must have suffered an injury in fact." (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013)); *see also Am. Booksellers Ass'n*, 484 U.S. at 392.

Associational standing is a limited exception to the prohibition against third-party claims that allows an organization to press claims "solely as the representative of its members." *See Students for Fair Admissions v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (quotation omitted).

Even if Plaintiffs could use associational standing to assert the rights of disabled persons who used handicap parking in Florida, Plaintiffs have not satisfied *any* of the requirements for associational standing. They have not established that their members themselves would have standing to sue, or that "the participation of [their] individual members in th[is] lawsuit" is unnecessary. *Students for Fair Admissions*, 600 U.S. at 199.

Second, Plaintiffs' claims require the "participation of individual members." *Students for Fair Admissions*, 600 U.S. at 199. Member participation is required if a plaintiff's claims "depend upon the [individual] circumstances of" its members. *Ga.*

---

at *5 (S.D.Fla. Aug.17, 2005).  Defendants do not believe that these cases help Plaintiffs, however, due to the issues discussed herein and in this Court's order granting motion to dismiss.

17

*Cemetery Ass'n v. Cox*, 353 F.3d 1319, 1322 (11th Cir. 2003); *Harris v. McRae*, 448 U.S. 297, 321 (1980) (member participation is necessary if a claim requires the court to examine how the challenged law "operates against" particular individuals); *Free Speech Coal., Inc. v. Att'y Gen.*, 974 F.3d 408, 421 (3d Cir. 2020) ("[C]onferring associational standing is improper for claims requiring a fact-intensive-individual inquiry.").

"An organization can establish standing in two ways: (1) through its members (i.e., associational standing) and (2) through its own injury in fact that satisfies the traceability and redressability elements." *See Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1114 (11th Cir. 2022). Here, to the extent that United seeks to sue for its own injury – its allegations are also insufficient. "Under this theory, an organization has standing if the defendant's illegal acts impair its ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts." *Ga. Ass'n of Latino Elected Offs.*, 36 F.4th at 1114 (quotation omitted). "To establish standing under a diversion of resources theory, an organizational plaintiff must explain where it would have to 'divert resources away from in order to spend additional resources on combating' the effects of the defendant's alleged conduct." *Id.* (quoting *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1250 (11th Cir. 2020). Here, however, even accepting Plaintiff United's vague allegations of diverting its resources to the

"pregnancy placard problem" – it is clear from the allegations that the diverting of resources is due to the existence of the law (and efforts by other states to follow suit) – not due to any actions of the Defendants in enforcing the law. *See Cousins v. Sch. Bd. of Orange Cty., Fla.*, 636 F. Supp. 3d 1360, 1375-1376 (M.D. Fla. 2022). Indeed, United could not provide one concrete example of a member harmed by any action by the Defendants (or even by anyone taking advantage of the law).

Because Plaintiffs have failed to establish standing, this action should be dismissed.

## II.    Plaintiffs Fail to State a Claim Under ADA.

Plaintiffs fail to state a claim under Title II of the ADA because merely allowing pregnant women to park in disabled spaces, does not deprive Plaintiff of any right under these laws.  The First Amended Complaint fails to state a claim for four reasons: (1) no Plaintiff has been excluded from the Department's disability parking permit program; (2) a delay in finding parking does not constitute lack of "meaningful access;" (3) Plaintiffs fails to allege that the disabled parking spaces are not "readily accessible;" and (4) section 320.0849 does not decrease the number of spaces required by the ADA.

The Eleventh Circuit stated:

To state a claim under either Title II or § 504, a plaintiff must establish '(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise

discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.'

*Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019) (quoting

*Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007)). Under the second

element, a qualifying individual with a disability must have meaningful access to the

service, programs, and activities; and those "services, programs, and activities

[must] be 'readily accessible.'" *Alexander v. Choate*, 469 U.S. 287, 301 (1985);

*Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001) (quoting 28 C.F.R. § 35.150).

First, Plaintiffs fail to show that they (or their members or disabled customers)

are being excluded from any of the Department's "programs or activities." The RA

defines "program[s] or activit[ies]" as "all of the operations of a [state] department."

29 U.S.C. § 794(b)(1)(A). The Department is tasked with issuing disabled parking

permits. *See generally* § 320.0848, Fla. Stat. While Plaintiffs characterize the

Department's program as "accessible parking spaces," under section 320.0848, the

Department is responsible for determining who receives a disability parking placard,

not the disabled spaces themselves. Thus, to state a claim, Plaintiffs would have to

show that exclusion from the Department's disabled parking permit program—

which they fail to do.

A plaintiff is "excluded" from a program where, because of their disability,

they face such undue burdens that they are effectively denied access to such

20

program. *See Todd v. Carstarphen*, 236 F. Supp. 3d 1311, 1330 (N.D. Ga. 2017) (discussing whether plaintiff was denied access to education based on her disability). Here, Plaintiffs have not been excluded from the Department's disability parking permit program. Plaintiffs (those who are disabled, as well as disabled members and customers) are still entitled to disability parking placard under section 320.0848, Florida Statutes. Section 320.0849 does not interfere with the ability to receive a disability placard or park in any van accessible space. Plaintiffs' access to the Department's "program" is the same as it was before section 320.0849's enactment. Plaintiff thus fails to show that she lacks access to the Department's program.

Next, even if accessible parking constituted a program or activity by the Department, Plaintiffs fail to state that they lack meaningful access to the program. Plaintiffs base their claims on the fact that the van accessible parking spaces may be used by pregnant women under section 320.0849. Yet, Plaintiff does not allege, nor could she, that by enacting section 320.0849, the disabled parking spaces are no longer available to her. Nowhere in section 320.0849 does it prohibit any disabled person, including Plaintiff, from accessing the spaces. Nor does section 320.0849 give preference to non-disabled persons over disabled persons. Plaintiff still has meaningful access to the disabled spaces required by law. Meaningful access "assure[s] evenhanded treatment," but it "does not mean 'equal access' or preferential treatment." *A.M. ex rel. J.M. v. NYC Dep't of Educ.*, 840 F. Supp. 2d 660,

21

680 (E.D.N.Y. 2012), aff'd sub nom. *Moody ex rel. J.M. v. NYC Dep't of Educ.*, 513

F. App'x 95 (2d Cir. 2013);  *see also Martin v. Florida Department of Agric. and*

*Consumer Services*, No. 4:23CV194-MW/MAF, 2025 WL 3459488, at *9 (N.D. Fla.

Aug. 14, 2025) ("[S]ome difficulty in accessing a benefit does not equate to a lack

of meaningful access [to that benefit]."). In *Martin*, this Court dismissed the ADA

claims because "delays regarding parking" did not constitute a denial of meaningful

access to a government building. *Id.* The same is true here, where while Plaintiffs

may experience difficulty finding parking, causing delays, the fact that they are still

able to access the accessible spots, when vacant, fails to state a claim under the ADA.

Various other courts, including the Eleventh Circuit, have reiterated that mere

difficulty in accessing a benefit, does not prove that there is no meaningful access

under the ADA. *See People First of Alabama v. Merrill*, 491 F. Supp. 3d 1076, 1155

(N.D. Ala. 2020) ("[M]ere difficulty in accessing a benefit is not, by itself, a violation

of the ADA."); *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1088 (11th Cir. 2007)

(holding that despite factual issues about whether an interpreter was requested, there

was no ADA violation because plaintiff was provided with other forms of effective

communication); *Ganstine v. Sec'y, Fla. Dep't of Corr.*, 502 F. App'x 905, 910 (11th

Cir. 2012) (finding that a disabled prisoner had meaningful access to certain prison

facilities where he was able to access the facilities "most of the time," despite

instances of not having access or having difficulties in accessing the facilities).

22

Therefore, as a matter of law, merely experiencing a delay in finding a parking spot is insufficient to show a denial of meaningful access under the ADA or RA.

Plaintiffs also fail to show that disabled parking spaces are no longer "readily accessible" to them. *See Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001) (stating that a service is not readily accessible when it is unfit for use by a disabled person). In *Shotz*, the court used examples of services that are not readily accessible such as where "ramps are so steep that they impede a disabled person or if the bathrooms are unfit for the use of a disabled person." *Id.* Plaintiffs do not allege that these disabled spaces are "unfit for use." There are no allegations stating that Plaintiffs have difficulty using the spaces that are already provided – other than as already happens when limited van-accessible spots are taken by others who have any type of disability (even if they don't need a van-accessible spot). Just because Plaintiffs (or their customers or members) could experience an increased difficulty in finding vacant spaces, does not mean that these spaces are not readily accessible. Thus, Plaintiffs fail to satisfy the second element necessary to state a claim under the ADA.

Lastly, Plaintiffs fail to show that section 320.0849 interferes with the number of disabled spaces required by the ADA. While Plaintiffs correctly point to the ADA Standards for Accessible Design, which set out the specific number of accessible spaces required by law, the Standards do not require that there must be spaces vacant and available for use by every disabled person who is able to use them. *See generally*

23

28 C.F.R. pt. 36 App. D. Plaintiffs have not sufficiently alleged that section 320.0849 has decreased the number of spaces required by law and available to them or their customers or members. As stated above, based on Plaintiffs' allegations, they are still able to use each of the spaces as was the case before section 320.0849 was enacted. Plaintiff cannot point to any requirement that there must be enough spaces for her to always find accessible parking. Therefore, because section 320.0849 has not decreased the number of accessible parking spaces that Plaintiffs can use, Plaintiffs fail to state a claim under the ADA.

## III.   Plaintiffs Failed to State a Preemption/Equity Claim.

In limited circumstances, a federal court can exercise jurisdiction and provide declaratory and equitable relief in favor of a party who could argue "preemption" as a defense to a prosecution against it. *See Upside Foods Inc., v. Comm., Fla. Dept. of Agric. & Cons. Serv.*, 171 F. 4th 1239 (11th Cir. 2026).   However, here, none of the Plaintiffs would be subject to enforcement by Defendants – and Plaintiffs have not alleged sufficient facts to demonstrate that any of them would have authority to have a vehicle with a pregnancy placard parked in a handicap parking space towed pursuant to Section 316.1955(1)(a), Florida Statutes.  Finally, the analysis of whether preemption would be a defense would require analyzing the individual placard owner's disabilities, if any.  Therefore, for the reasons discussed above in preceding

24

sections, and for this additional reason, Plaintiffs failed to state a cause of action for Preemption/Equity (Count II).

## **CONCLUSION**

In conclusion, for the reasons above, as well as for the reasons discussed in this Court's prior dismissal order – which demonstrates errors that have not been cured by Plaintiffs – the Defendants respectfully request that this Court grant this Motion and dismiss the First Amended Complaint.

Dated: June 1, 2026.


Respectfully submitted,

JAMES UTHMEIER
ATTORNEY GENERAL

*/s/ James P. Waczewski*
JAMES P. WACZEWSKI (FBN 0154989)
SPECIAL COUNSEL
James.Waczewski@myfloridalegal.com
Complexlitigation.eservice@myfloridalegal.com
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
850-414-3300


## **LOCAL RULE 7.1(F) CERTIFICATION**

Pursuant to Local Rule 7.1(F), this motion and memorandum contain 5,830 words.

/s/ *James P. Waczewski*
James P. Waczewski

## **CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b)(2)(E), this document was filed electronically with the court's electronic-filing system and service shall be through the Court's transmission facilities on all registered users.

/s/ *James P. Waczewski*
James P. Waczewski

26