**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

UNITED SPINAL ASSOCIATION;
FAITH OLIVIA KELLER; KIMBERLY
HARRISON; LINDA GITCHELL; and
LAURA ABBOTT dba LAURA J.
ARTISTRY,

                                                    Case No: 4:25-cv-00450-AW-MAF

     Plaintiffs

v.

FLORIDA DEPARTMENT OF
HIGHWAY SAFETY AND MOTOR
VEHICLES and DAVE KERNER, in his
official capacity as Executive Director of
the Florida Department of Highway
Safety and Motor Vehicles

     Defendants.

_____/

**<u>PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'</u>**
**<u>MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

Plaintiffs challenge Florida's 2025 law that allows anyone who is pregnant to get a parking permit authorizing them to park in accessible disability parking spaces for one year. Section 320.0849 conflicts with the Americans with Disabilities Act (ADA) which sets out minimum federal standards for accessible parking and reserves such parking for people with disabilities. As a result,

Plaintiffs, their customers and their members – people with mobility disabilities who can only park in accessible disabled parking spaces – are experiencing and will continue to experience additional delay, inconvenience, isolation, frustration, anxiety, embarrassment, wasted time, disappointment, and feelings of exclusion, among other harms.

Plaintiffs allege concrete and particularized injuries directly traceable to Section 320.0849, including two instances in which individual Plaintiffs were unable to park in accessible spaces (also known as "blue spaces") taken by people with pregnancy permits issued by the Florida Department of Highway Safety and Motor Vehicles (FLHSMV), and were thereby forced to dangerously exit into the driving lane. Plaintiffs allege that future harm is substantially likely and imminent because FLHSMV has and continues to issue thousands of Expectant Mother Parking Permits (EMPPs) and Plaintiffs must continue to seek to park in accessible disability parking spaces, to which they have a legal right. Plaintiffs allege the ability of FLHSMV and its executive director to redress the harm.

Plaintiff United Spinal alleges injuries that establish its standing to bring this claim. First, United Spinal members have experienced and will continue to experience concrete and particularized injuries. Second, addressing the harms caused by FLHSMV's issuance of EMPPs has been time-consuming, disruptive and has frustrated United Spinal's mission of advocating for independence, quality

2

of life, and community integration for people living with spinal cord injuries and all wheelchair users.

Plaintiffs have standing, allege injuries traceable to Defendants, and have stated a claim for disability discrimination under the ADA. They allege a denial of the benefits of accessible parking because Defendants are intentionally violating federal access standards by authorizing thousands of people who have not shown any disability to park in blue spaces for one year based solely on pregnancy. Defendants' actions and inactions further constitute an unlawful denial of reasonable modification and interference. Defendants' motion to dismiss should be denied.

**ARGUMENT**

**I.      Plaintiffs Allege Injuries in Fact and Have Standing Under Article III**

Plaintiffs allege the three elements of standing under Article III: they have pled a concrete and particularized injury in fact; there is a causal connection between the injury and the Defendants' issuance of EMPPs; and it is likely that if the Court grants the injunctive and declaratory relief that Plaintiffs seek, and orders Defendants to stop issuing EMPPs, or to modify the authorization provided by the placards to be used only for separate pregnancy spaces, their injuries will be redressed. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). At the pleading stage, "general factual allegations of injury resulting from the defendant's

3

conduct may be sufficient to show standing." *Bischoff v. Osceola Cty.*, 222 F.3d 874, 878 (11th Cir. 2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

### A.    The Individual Disabled Plaintiffs Allege Injuries in Fact

The individual disabled Plaintiffs allege injuries that are actual, imminent, and concrete. Plaintiffs Keller, Harrison, and Gitchell have detailed the increased and additional delay, inconvenience, isolation, frustration, anxiety, embarrassment, wasted time, disappointment and exclusion they experience due to Defendants' issuance of EMPPs. Second Amended Complaint, Dkt. No. 40 at ¶¶ 51, 58, 68, 81. Plaintiffs Harrison and Gitchell allege experiences in which they have been excluded from the only appropriate accessible parking space available because the space was taken by a person with an EMPP. As a result, each has had to disembark into the driving lane, which is both inconvenient and dangerous. *Id*. at ¶¶ 32, 35-37, 59-66, 75-78. All three Plaintiffs have seen EMPPs displayed in accessible parking spaces and are certain to be excluded from accessible spaces in the future.

Citing no authority, Defendants contend that the individual Plaintiffs cannot establish standing, even if they are forced to disembark dangerously into the driving lane due to the blue space being taken by a parker with an EMPP, unless they "ask[] the lady if she would kindly trade disability spots." Dkt. No. 42 at pp. 4-5. This makes no sense and has no relationship to standing doctrine. When she

4

initiated a conversation with the pregnant woman who had parked using an EMPP, Plaintiff Harrison had already exited her vehicle into the driving lane and her husband had already parked. Dkt. No. 40 at ¶ 62. Moreover, Section 320.0849 does not impose a duty upon EMPP-holders to surrender their parking space to disabled parkers. Defendants also argue that the individual Plaintiffs should ask parkers with EMPP placards "questions about her health, pregnancy difficulties, or any disability that would qualify her for a temporary permit." Dkt. No. 42 at p. 5. Whether a parker could obtain a different kind of placard is counter-factual, and confronting strangers about their medical details and who should have a particular parking space is dangerous.[1] The complaint alleges concrete injuries caused by parkers with EMPPs.

### 1.    Plaintiffs Allege Past Injuries With Present Adverse Effects

"Past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). While "past exposure to illegal conduct does not in itself" establish standing, it is sufficient "if []accompanied by any continuing, present adverse effects." *City of*

---

[1] *See*, *e.g.*, Dispute over Walmart parking spot leads to fatal shooting in North Lauderdale, Broward Sheriff's Office says, CBS News (July 1, 2026), https://www.cbsnews.com/miami/news/florida-walmart-parking-space-shooting-north-lauderdale/; Florida's 'stand your ground' law under scrutiny after father killed over parking spot, NBC News (July 23, 2018) (describing fatal dispute over disability parking space), https://www.nbcnews.com/news/us-news/florida-s-stand-your-ground-law-under-scrutiny-after-father-n893646.

*Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Plaintiffs here allege that FLHSMV's actions have caused injury in fact to the plaintiffs and have identified concrete examples of past injuries that have resulted from FLHSMV's issuance of EMPPs. *Lyons*, 461 U.S. at 101; Dkt. No. 40 at ¶¶ 49, 58-65, 74-77. Plaintiffs allege that thousands of EMPPs have been issued based on pregnancy and without regard to disability. Dkt. No. 40 at ¶ 23. Plaintiffs allege that, within six months of FLHSMV first issuing EMPPs, Plaintiffs Gitchell and Harrison were excluded from blue spaces due to parkers with EMPPs. *Id.* at ¶¶ 59-65, 75-77. Defendants' position that the complaint lacks "allegations that there are actually pregnant women obtaining these permits and taking up disabled parking spaces that Plaintiff would likely use," Dkt. No. 42 at p. 12, is contradicted by the express allegations of the complaint, which include descriptions of a parker who is pregnant and a parker who is no longer pregnant using EMPPs to occupy accessible parking spaces that Plaintiffs would otherwise use. Dkt. No. 40 at ¶¶ 21-23, 58-65, 74-77.

Plaintiffs' past injuries are accompanied by "continuing, present adverse effects." *Lyons*, 461 U.S. at 102. There is already a shortage of blue spaces, but Defendants continue to issue thousands of EMPPs. Dkt. No. 40 at ¶¶ 13-14, 23, 49, 51, 68, 81. Based on these facts, and their experiences so far, Plaintiffs are experiencing additional delay, inconvenience, isolation, frustration, anxiety, embarrassment, wasted time, disappointment, and feelings of exclusion. *Id.* at

¶¶ 24, 31, 51, 58, 68, 74, 81. But for FLHSMV's issuance of EMPPs, Plaintiffs would not continue to suffer injury.

> 2.    Plaintiffs Allege a Substantial Likelihood of Imminent Future Harm

A plaintiff can establish standing for prospective relief by alleging the harm is substantially likely and imminent. *Corbett v. Transp. Sec. Admin.,* 930 F.3d 1225, 1233 (11th Cir. 2019). A plaintiff need not "demonstrate that it is literally certain that the harms they identify will come about." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013). Substantial likelihood is "necessarily a qualitative judgment," and courts should look to precedent as "guideposts." *Fla. State Conference of the NAACP v. Browning*, 522 F.3d 1153, 1163 (11th Cir. 2008) (holding that a 1% mistaken mismatch rate affecting 20,000 members stated an injury for standing purposes, as such injuries are "foreseeable and the expected results of unconscious and largely unavoidable human errors.").

An imminent injury is a harm likely to occur within "some fixed period of time in the future," but the standard does not require that the harm occur "soon or precisely within a certain number of days, weeks, or months." *Browning*, 522 F.3d at 1161. Rather, plaintiffs must allege that they will experience injuries "sometime in the relatively near future." *Adarand Constructors v. Pena,* 515 U.S. 200, 211 (1995); *see also id.* at 212 (ruling that contractor who would compete for bid "at least one per year," in which competitors allegedly had unlawful advantage, had

established standing).

Here, Plaintiffs allege injuries that occurred shortly after the FLHSMV began issuing EMPPs. Plaintiff Gitchell alleges that she was injured three months after FLHSMV began issuing EMPPs. Dkt. No. 40 at ¶¶ 75-77. Plaintiff Harrison alleges injury within six months of availability of the EMPPs; she was excluded by a parker with a permit that was valid for another seven months. *Id.* at ¶¶ 59-65. Plaintiffs also allege that FLHSMV has and continues to issue thousands of EMPPs, each valid for one year. *Id.* at ¶ 23. Plaintiffs thus allege "when, where, and how" their injuries will occur. *Browning*, 522 F.3d at 1161. Further, Plaintiffs allege that they park in, or rely on, blue spaces on many occasions, including at locations they visit repeatedly and where they have seen EMPPs displayed on car taking accessible spaces. Dkt. No. 40 at ¶¶ 32-34, 59-66 (park), 35-37, 75-78 (prosthetics clinic), 49 (doctor's office), 79 (infectious diseases clinic). Plaintiffs sufficiently allege that future harm is imminent.

The Eleventh Circuit has repeatedly ruled that plaintiffs have standing where, due to an "involuntary" condition, they cannot avoid exposure to an unlawful policy. *31 Foster Children v. Bush*, 329 F.3d 1255, 1266 (11th Cir. 2003) (finding standing where foster children plaintiffs were in custody of the defendants involuntarily and could not avoid exposure to the defendants' challenged conduct); *Church v. City of Huntsville*, 30 F.3d 1332, 1338-39 (11th Cir. 1994) (finding

standing where plaintiffs were homeless involuntarily and could not avoid exposure to City's "custom, practice and policy" of engaging in the challenged conduct) (citing *Honig v. Doe*, 484 U.S. 305-320 (1988)).

Here, Plaintiffs allege that they must park in accessible spaces due to their physical disabilities, which are "involuntary" conditions. Dkt. No. 40 at ¶¶ 45-47, 54-55, 71-72; *cf All. for Hippocratic Med.*, 602 U.S. at 374 (plaintiffs lacked standing because they did not use or sell mifepristone). They allege that enforcement of an unlawful policy, Section 320.0849, is causing them injury. Future harm to Plaintiffs here does not depend upon "random or unauthorized" acts of rogue parkers; rather, "the threatened acts that will cause injury are authorized or part of a policy," so that "it is significantly more likely that the injury will occur again." *31 Foster Children*, 329 F.3d at 1266; *cf. Lyons,* 461 U.S. at 110 (future harm would not result from a policy and depended on plaintiff voluntarily engaging in illegal conduct).

Defendants' repeated citation to *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001), is unpersuasive. Plaintiffs allege specific facts giving rise to a non-speculative inference that they will suffer future discrimination caused by Defendants. *Cf. Richards v. Crews*, No. 4:13cv30, 2014 U.S. Dist. LEXIS 32804, at *9 (N.D. Fla. Feb. 19, 2014) (granting *pro se* incarcerated person leave to file more definite statement to allege how rule excluding publications will cause him

constitutional injury). Here, based on Defendants' implementation of Section 320.0849, it is foreseeable and expected that nondisabled people will continue to park in blue spaces using EMPPs and Plaintiffs will continue to encounter them and experience injury. *Accord Church*, 30 F.3d at 1338 ("If true, the plaintiffs' allegations in this case would establish a substantial likelihood that, absent an injunction, the City will continue to act in a similar manner toward them in the future."). Defendants' actions are substantially likely to cause Plaintiffs future harm.

Defendants would require Plaintiffs to allege not only that they face a realistic danger of encountering an EMPP-holder parked in a blue space they need, but that the parker will be identifiable, present within earshot, deny a request to move their vehicle, and divulge private medical information. Dkt. No. 42 at pp. 5-6. Plaintiffs allege enough. They allege their need for accessible parking spaces, their encounters with EMPP parkers so far, and the thousands of EMPPs that have been distributed. It is "sufficiently predictable" that they will again encounter EMPP-holders parked in the blue spaces they need. *Cf. All. for Hippocratic Med.*, 602 U.S. at 383. Plaintiffs are not required to "await the consummation of threatened injury to obtain preventive relief," *Browning*, 522 F.3d at 1161, nor "demonstrate that it is literally certain that the harms they identify will come about." *Clapper*, 568 U.S. at 414 n.5.

10

B.        **Plaintiff Abbott Alleges an Injury in Fact**

Plaintiff Abbott alleges a concrete injury to her property and business interests because Defendants have negatively altered the parking area that is part of the business lease she negotiated. Ms. Abbott can no longer represent to her disabled clients that her business is located near a van-accessible parking space that is reserved for people with disabilities. This is a concrete injury. *See Royal Palm Props., Ltd. Liab. Co. v. Pink Palm Props., Ltd. Liab. Co*., 950 F.3d 776, 787 n.6 (11th Cir. 2020) (noting that Pink Palm Properties has suffered an "injury in fact" as it cannot use the "Royal Palm Properties" mark). Ms. Abbott can no longer take steps to ensure that the parking space is reserved for people with disabilities. For example, she cannot request that nondisabled people with EMPPs parked in the blue space near her business be ticketed and towed. Instead, Defendants' implementation of Section 320.0849 forbids Ms. Abbott from exercising that right as to nondisabled people with EMPPs. Ms. Abbott must allow EMPP-holders to use the space. This is a concrete injury. *See All. for Hippocratic Med.*, 602 U.S. at 382 (laws which "require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements."); *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cty.*, 450 F.3d 1295, 1304 (11th Cir. 2006) (noting that a zoning restriction on property use constitutes an injury in fact); *Bell v. Orange Cty.*, No. 6:25-cv-865-PGB-NWH, 2025 U.S. Dist. LEXIS

11

262739, at *11 (M.D. Fla. Dec. 19, 2025), adopted 2026 U.S. Dist. LEXIS 7253 (M.D. Fla. Jan. 14, 2026) (ruling that plaintiff may amend complaint to allege injury in fact over permitting dispute related to proposed shed).

Defendants argue that Plaintiffs misstate Fla. Stat. § 316.1955(1)(a) and that a lessee is powerless to remove a vehicle illegally parked in a disabled space. But the law appears to contain a typographical error. *See* Fla. Stat. § 316.1955(1)(a) (referencing "officer," "owner or lessee of the space" and "*that* officer, owner, or lessor shall have the vehicle in violation removed.") (emphasis supplied). The word "that" refers to officers, owners, and lessees in the preceding clause, and there is no reference to "lessors" there. Regardless, Defendant FLHSMV does not interpret the law according to its contention here.[2] Thus, under the law, an enforcing party "shall have the vehicle in violation removed." *Id*. Ms. Abbott can no longer enforce this right as to EMPP-holders.

It follows that if a business owner is aware or suspects that a nondisabled individual is parked in a blue space, they must take action to enforce the parking restrictions. Failure to do so violates not only state law but the ADA as well. *See, e.g.*, 42 U.S.C. §§ 12182(b)(1)(E), 12188(a)(1); *Houston v. Marod Supermarkets,*

---

[2] See Frequently Asked Questions, FLHSMV, https://www.flhsmv.gov/motor-vehicles-tags-titles/disabled-person-parking-permits/frequently-asked-questions/ ("Who will enforce the disabled parking spaces? Law enforcement officers, parking enforcement specialists and the owner or lessee of the space that finds a vehicle in violation may enforce parking restrictions or have the vehicle towed.").

*Inc*., 733 F.3d 1323, 1336 (11th Cir. 2013) (finding that plaintiff had standing to challenge lack of accessible parking in violation of the ADA). But here, Ms. Abbott cannot simultaneously comply with state and federal statutory law. This, too, imposes an injury in fact. *United States v. Florida,* 172 F.4th 1201, 1227 (11th Cir. 2026) (the law "generally allows pre-enforcement challenges to imminent violations of statutory rights."); *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 128-129 (2007) (plaintiff need not "expose himself to liability before bringing suit to challenge the basis for the threat.").

    **C.**    **Plaintiff United Spinal Alleges an Injury in Fact**

Plaintiff United Spinal alleges organizational injuries under theories of associational standing and direct standing.

    1.    Plaintiff United Spinal Alleges Associational Standing

An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). Defendants concede, as they must, that the Eleventh Circuit and district courts in this Circuit have found associational standing for ADA cases seeking prospective relief. *See* Dkt No. 42 at 19, n.3

13

(citing *Doe v. Stincer*, 175 F.3d 879, 885 (11th Cir. 1999) (holding that it is enough for an associational plaintiff to allege that one of its members or constituents has suffered an injury that would allow them to bring suit in their own right)); *Alumni Cruises, LLC v. Carnival Corp.*, 987 F. Supp. 2d 1290, 1301-2 (S.D. Fla. 2013) (agreeing with courts in this circuit in finding associational standing for organizations bringing suit under the ADA) (citing *Stincer*, 175 F.3d at 886); *Access 4 All, Inc. v. Atlantic Hotel Condominium Assoc.*, No. 04-61740-CIV-COHN, 2005 U.S. Dist. LEXIS 41601, at *25 (S.D. Fla. Nov. 22, 2005)).

Plaintiff United Spinal has associational standing and can sue on its members' behalf, including Plaintiffs Keller, Harrison, and Gitchell, because they are members of United Spinal who "would otherwise have standing to sue in [their] own right." *S. River Watershed All., Inc. v. Dekalb Cnty.,* 69 F.4th 809, 819-20 (11th Cir. 2023) (citing *Arcia v. Fla. Sec'y of State,* 772 F.3d 1335, 1342 (11th Cir. 2014)) (holding that environmental group had standing to sue based on an injury to one of its members). Plaintiffs Keller, Harrison, and Gitchell, and additional United Spinal members, have been injured and will continue to be injured as a result of Defendants' enforcement of Section 320.0849. Defendants ignore the detailed allegations regarding United Spinal members Keller, Harrison, and Gitchell about their past and likely future harms which result in "anxiety" and "exclusion" that this Court previously found sufficient for a concrete injury. Dkt.

No. 15 at p. 4; Dkt. No. 40 at ¶¶ 31-37.

Moreover, United Spinal is an organization dedicated to empowering and advocating for people living with spinal cord injuries and all wheelchair users to obtain greater independence and quality of life. *Id.* at ¶ 26. Thousands of United Spinal members in Florida and outside the state rely on disability parking permits to access parking and participate in community life, and participation in this lawsuit is "germane to the organization's purpose." *Id.* at ¶ 29; *S. River,* 69 F.4th at 819 (citing *Arcia*, 772 F.3d at 1342). Germaneness is "undemanding" and almost never a bar to standing, and Plaintiffs sufficiently allege this element. *See Schalamar Creek Mobile Homeowner's Ass'n v. Adler*, 855 F. App'x 546, 553 (11th Cir. 2021); *see also Yelapi v. DeSantis,* 525 F. Supp. 3d 1371, 1377 n.4 (N.D. Fla. 2021) (J. Winsor) (finding Disability Rights Florida had associational standing because its members had standing and the ADA case was germane to its purpose). Similarly, the last element for associational standing—that neither the claim nor the relief requested requires the participation of individual members—is "not normally necessary" when "the relief sought is injunctive," as it is here. *Browning*, 522 F.3d at 1160 (quotation omitted).[3]

---

[3] The cases cited by Defendants for their assertion that individual member participation is required are all factually inapposite, as they consider constitutional claims that require individualized factfinding. *Cf. Ga. Cemetery Ass'n v. Cox*, 353 F.3d 1319, 1322 (11th Cir. 2003) (holding that individual members had to participate in takings clause case where only certain members experienced injury depending on individualized economic

2.      Plaintiff United Spinal Alleges Direct Standing

Plaintiff United Spinal alleges direct organizational standing because it is diverting resources away from advocacy initiatives to address EMPPs. *See Browning*, 522 F.3d at 1166 (rejecting the state's argument that "an act or law merely causing the organization to voluntarily divert resources in response to the law … is not an injury cognizable under Article III.") Plaintiff United Spinal details the specific activities that are being negatively impacted and how and to where resources are being diverted. For example, the complaint alleges resources expended responding to problems through emails, phone calls and meetings with concerned members. Dkt. No. 40 at ¶¶ 24(b), 40. United Spinal staff have also been actively monitoring the implementation of Section 320.0849 and urging the Florida Legislature to repeal it. *Id.* at ¶ 40.

Plaintiff United Spinal alleges with specificity the projects impacted by the diversion including advancing disability supports unrelated to accessible parking, an accessible parking working group, care support and wheelchair repair. *Id.* at

---

circumstances); *Harris v. McRae*, 448 U.S. 297, 321 (1980) (holding that members of church women's group had to participate to show alleged coercive effect of abortion funding ban on an individual's free exercise of religion); *Free Speech Coal., Inc. v. Att'y Gen.*, 974 F.3d 408, 421 (3d Cir. 2020) (holding that an as-applied First Amendment claim to federal law regulating certain forms of pornography required an individualized inquiry into the specific conduct and practices of each member of adult film associations). Here the United Spinal members are experiencing the same injury with no individualized review needed.

16

¶¶ 40-41. The result is that United Spinal is unable to continue its usual activities, has delayed responses to members and has postponed work on other issues. *Id.* at ¶ 42.[4]

The drain on Plaintiff United Spinal's resources is sufficient to confer standing. *See, e.g., Browning,* 522 F.3d at 1165 (holding an "organization suffers an injury in fact when a statute compels it to divert more resources to accomplishing its goals …. [T]he fact that the added cost has not been estimated and may be slight does not affect standing, which requires only a minimal showing of injury."). So long as FLHSMV continues to issue EMPPs, Plaintiff United Spinal will continue to suffer the alleged harms.

## D.   Plaintiffs Allege That Their Injuries Are Traceable to the Defendants

"Article III standing requires that the plaintiff's injuries be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Walters v. Fast AC, Ltd. Liab. Co.*, 60 F.4th 642, 650 (11th Cir. 2023) (quoting *Lujan*, 504 U.S. at 560). Plaintiffs allege that Defendant FLHSMV is the agency responsible for administering the

---

[4] The case Defendants cite, *Cousins v. Sch. Bd. of Orange Cty.*, 636 F. Supp. 3d 1360, 1375 (M.D. Fla. 2022), does not apply here. Unlike in that case, Plaintiffs allege that Defendants have issued, continue to issue, and will continue to issue, thousands of EMPPs to nondisabled pregnant individuals and United Spinal reasonably anticipates that it will continue to suffer the alleged harm into the future.

17

disabled persons parking permit program for the State of Florida. Dkt. No. 40 at ¶ 18. Plaintiffs allege that Defendants have issued and continue to issue thousands of EMPPs to individuals based on pregnancy and not disability, *id*. at ¶ 23, and that these placards are injuring Plaintiffs. Because Defendants have issued and continue to issue EMPPs, nondisabled individuals have parked and will predictably continue to park in blue spaces that the Plaintiffs and their members need. Plaintiffs and their members have and will predictably continue to be injured. *Id*. at ¶¶ 40, 42, 49, 58, 74, 78, 79.

Traceability is not defeated "merely because the alleged injury can be fairly traced to the actions of both parties and non-parties." *Maron v. Chief Fin. Officer of Fla*., 136 F.4th 1322, 1331 (11th Cir. 2025). The presence of "multiple actors in a chain of events that lead to the plaintiff's injury does not mean that traceability is lacking." *Garcia-Bengochea v. Carnival Corp*., 57 F.4th 916, 927 (11th Cir. 2023) (where the Cuban government confiscated plaintiff's waterfront property later used by defendants, plaintiff's injury – financial loss – was traceable to defendants even if the Cuban government was also responsible). The allegations in the Second Amended Complaint are sufficient to satisfy traceability in the Eleventh Circuit, where "even harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." *Focus on the Family v. Pinellas Suncoast Transit Auth*., 344 F.3d 1263, 1273 (11th Cir. 2003). Defendants

have already issued EMPPs and burdened Plaintiffs, which resolves the traceability analysis in Plaintiffs' favor. *See Arcia*, 772 F.3d at 1342 n.2. While Plaintiffs' injuries depend in part on the actions of EMPP-holders, such actions are authorized by FLHSMV and the injuries would not occur but for FLHSMV's issuance of EMPPs.

Defendants cite to this Court's review of the "highly attenuated" chain of events Plaintiff Keller would need to experience before she was injured for purposes of Article III.[5] But the allegations in Plaintiffs' Second Amended Complaint essentially meet this chain of events with respect to Plaintiffs Harrison and Gitchell, Dkt. No. 40 at ¶¶ 32, 35-37, 59-66, 75-78, and further include the injuries to United Spinal and its members, an organizational plaintiff with 2,460 members in Florida, *id.* at ¶ 29. Plaintiffs further allege that more than 10,000 individuals have received one-year EMPPs on the basis of pregnancy and with no showing of disability. *Id.* at ¶ 23. Plaintiffs plausibly allege that there is a substantial likelihood that injuries will occur in the imminent future. *Id.* at ¶¶ 40, 42, 49, 58, 74, 78, 79. As such, the chain is not attenuated and Plaintiffs plausibly

---

[5] Stated the Court: "[N]either the new law nor the Department's actions in implementing it will cause Keller's harm unless each of the following materialize: (1) A woman will apply for and receive an expectant-mother parking permit; (2) she would have been ineligible for—and not have obtained—any disabled parking permit absent the law; (3) she will park in the same lot Keller seeks to park at the same time; and (4) all accessible parking is taken when Keller arrives." Dkt. No. 15 at p. 7.

19

allege that their injuries are, at the very least, "indirectly caused by a defendant's actions." *Garcia-Bengochea*, 57 F.4th at 927 (citation omitted).

Plaintiff United Spinal's organizational injury is similarly directly traceable to Defendants. But for Defendants' issuance of EMPPs, Plaintiff United Spinal would not be forced to divert resources as alleged.

### E.    Plaintiffs Allege That Their Injuries Are Redressable

Traceability and redressability are "flip sides of the same coin." *All for Hippocratic Med.*, 602 U.S. at 380 (citation omitted). At the pleading stage, Plaintiffs need only demonstrate that redressability is "'likely,' not certain." *See TVA v. United States EPA,* 278 F.3d 1184, 1207 (11th Cir. 2002) (quoting *Lujan*, 504 U.S. at 561). Those injuries – the issuance of EMPPs and resulting harm – will be remedied if this Court: enjoins Defendants from issuing, distributing or recognizing EMPPs and invalidating all previously issued EMPPs and/or directs a reasonable modification of the policy to ensure that EMPPs only allow permitholders to use parking spaces designated specifically for pregnancy, and not blue spaces reserved for people with disabilities and regulated by the ADA. Dkt. No. 40 at ¶ 25(b); Prayer for Relief ¶¶ B, C. Plaintiffs sufficiently allege that a court order can redress their ongoing injuries.

## II.    Plaintiffs State a Claim For Disability Discrimination Under the ADA

The ADA was enacted "to provide a clear and comprehensive national

20

mandate for the elimination of discrimination against individuals with disabilities," and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. §§ 12101(b)(1)-(2). "[T]he Act [is] broadly construed" to effectuate its remedial purposes. *Kornblau v. Dade Cty.*, 86 F.3d 193, 194 (11th Cir. 1996). To state a claim under Title II of the ADA in the Eleventh Circuit, a plaintiff must establish three elements: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, activities, or otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Karantsalis v. City of Miami Springs, Florida*, 17 F.4th 1316, 1322 (11th Cir. 2021) (citation omitted).

Defendants do not dispute elements (1) or (3) but contend that Plaintiffs do not allege facts to support element (2). Dkt. No. 42 at pp. 21-26. Yet as the complaint details, Defendants are violating the ADA's access standards and, by so doing, are denying Plaintiffs the benefits of the accessible parking permit program based on their disabilities.

A. **By Violating Federal Access Standards, Defendants Are Discriminating Against Plaintiffs and Denying Them the Benefits of the Accessible Parking It Regulates**

The ADA "'require[s] compliance with specific architectural accessibility

21

standards,' including the ADA Accessibility Guidelines for Buildings and Facilities ('ADAAG') set forth at 36 C.F.R. part 1191, appendices B and D." *Wright v. Bd. of Comm'rs of the Capital Area Transit Sys.*, 551 F. Supp. 3d 607, 612-13 (M.D. La. 2021) (citing and quoting from *Tennessee v. Lane*, 541 U.S. 509, 532 (2004)); *see also* Dkt. No. 40 at ¶ 10 (citing applicable access standards). "The guidelines detail the ADA's structural requirements and provide the objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations." *Apac v. Meh Props.*, No. EP-24-CV-127-KC, 2024 U.S. Dist. LEXIS 201406 at *18 (W.D. Tex. Nov. 1, 2024) (cleaned up). "[A] barrier violating these standards [that] relates to a plaintiff's disability … constitutes 'discrimination' under the ADA." *Id.* at *19; *accord Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 947 (9th Cir. 2011) ("Because the ADAAG establishes the technical standards required for 'full and equal enjoyment,' if a barrier violating these standards relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA.").

Here, the ADA requires that parking areas for members of the public accessing Title II- or Title III-covered entities have a certain number of blue spaces for people with disabilities. Dkt. No. 40 at ¶¶ 10-12. A blue space is designed to be safe and useable for people with mobility disabilities. The minimum required

number of accessible spaces depends upon the size of the parking area and totals about 2 to 4% of all parking spaces. Some places like hospitals and rehabilitation centers must have more blue spaces. At least one out of every six accessible spaces must be designed for vans. *Id.* at ¶ 12.[6] Under federal law, accessible disability parking spaces are reserved for people with disabilities. *Id.* at ¶ 15.

In violation of these standards, Defendants are intentionally authorizing thousands of people who have not demonstrated any disability to park in the reserved spaces for one year based solely on pregnancy.[7] In so doing, Defendants have materially decreased and are continuing to decrease the number of accessible disability parking spaces available to disabled Floridians below federal scoping minimums in violation of the ADA. That Defendants are causing the violation of access standards by authorizing EMPPs does not alter the analysis. In *Frame v. City of Arlington*, the Fifth Circuit rejected a similar argument and ruled: "If a city official authorizes a public sidewalk to be built in a way that is not readily

---

[6] While applicable access standards vary depending upon when a parking lot is built or altered, or when readily achievable changes are made, the scoping and design requirements for parking lots are consistent across all relevant standards. *Cf. Apac v. Villar*, *supra*., at *25-26 ("Creating and designating accessible parking spaces is presumptively 'readily achievable,' and is low cost and easy to do. Accordingly, courts frequently order defendants, on default judgment, to provide ADA-compliant, van-accessible parking spaces.") (citations omitted).

[7] Public records indicate that about 18,000 people a year are receiving EMPPs. Plaintiffs anticipate and allege that the number of permits will rise substantially over time. Dkt No. 40 at ¶ 3 & n.3.

23

accessible to disabled individuals without adequate justification, the official denies disabled individuals the benefits of that sidewalk no less than if the official poured the concrete himself." 657 F.3d 215, 227 (5th Cir. 2011).

As a result of Defendants' unlawful issuance of EMPPs, Plaintiffs and United Spinal members with mobility disabilities have experienced and will continue to experience harms including inconvenience, abandonment of daily plans, frustration, and being forced to dangerously embark and disembark from cars. Dkt. No. 40 at ¶¶ 31-38, 43-81. These are harms that the ADA was intended to prohibit. Plaintiffs have stated a claim under the ADA.

**B.** **<u>Even if the Meaningful Access Standard Applies, Plaintiffs Have Stated a Claim That Defendants Are Denying Them Meaningful Access to Accessible Parking</u>**

The phrase "meaningful access" derives not from the text of the ADA or its implementing regulations, but from the Supreme Court's opinion in *Alexander v. Choate*, 469 U.S. 287 (1985). In *Choate*, the plaintiffs argued that the state Medicaid program's cap on hospital stay days violated Section 504 because of its disproportionate impact on people with disabilities, without reference to any federal minimum access standards. *See id.* at 299-309. Here, the "meaningful access" standard is not needed. Plaintiffs allege Defendants are violating the ADA and its implementing regulations by intentionally issuing EMPPs that violate the minimum federal access scoping standards. Courts rule routinely that violations of

24

the access standards violate the ADA without reference to the "meaningful access" standard (or with an understanding that "meaningful access" is denied whenever the access standards are violated).[8] Once the plaintiff shows a violation of an applicable access standard that relates to their disability, there is no additional "denial of meaningful access" showing required.

Moreover, even if the "meaningful access" standard somehow applies here, Plaintiffs have stated a claim. "Meaningful access" is not a lesser standard that translates roughly to "good enough" access even if accompanied by inconvenience, burden, delay, and danger. Rather, the Eleventh Circuit and additional appellate courts define "meaningful access" robustly and in explicit terms of equality. *A.L. v.*

---

[8] *See, e.g.*, *Cohan v. Friends & Food Ltd. Liab. Co.*, No. 25-CV-81236, 2026 U.S. Dist. LEXIS 110578 (S.D. Fla. May 18, 2026) (issuing default judgment for access violations with no reference to "meaningful access."); *Isaacson v. Zoba Grp. LLC*, No. 25-61415, 2025 U.S. Dist. LEXIS 233163 (S.D. Fla. Nov. 28, 2025) (same); *Seiger v. Wollowick*, No. 8:16-cv-475-T-33AEP, 2016 U.S. Dist. LEXIS 131908 (M.D. Fla. Sep. 27, 2016) (same); *Kahn v. Cleveland Clinic Fla. Hosp.*, No. 16-61994, 2019 U.S. Dist. LEXIS 121499 (S.D. Fla. July 22, 2019) (finding liability based on access violations following bench trial with no reference to "meaningful access"); *Wright v. Bd. of Comm'rs of the Capital Area Transit Sys.*, 551 F. Supp. 3d 607, 617 (M.D. La. 2021) (rejecting defendant's meaningful-access-through-paratransit argument where bus stops did not comply with access standards); *see also Bailey v. Bd. of Comm'rs of the La. Stadium & Exposition Dist.*, 484 F. Supp. 3d 346, 424 (E.D. La. 2020) (finding that plaintiff had "meaningful access" where access standards were met); *Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1221 (10th Cir. 2014) (rejecting plaintiff's discrimination claim where defendant's facilities met access standards); *Kornblau v. Dade Cty.*, 86 F.3d 193, 194 (11th Cir. 1996) (same); *Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001) ("If the Courthouse's wheelchair ramps are so steep that they impede a disabled person or if its bathrooms are unfit for the use of a disabled person, then it cannot be said that the trial is 'readily accessible,' regardless whether the disabled person manages in some fashion to attend the trial.").

25

*Walt Disney Parks & Resorts US, Inc*., 900 F.3d 1270, 1294-95, 1296 (11th Cir.

2018) (reviewing caselaw defining "meaningful access" as "equal opportunity,"

and assessing whether the Disability Access Service "afforded the severely

disabled plaintiffs a like experience and equal enjoyment.");[9] *Ellison v. U.S. Postal*

*Serv.*, 84 F.4th 750, 757 (7th Cir. 2023) (meaningful access requires an "equal

opportunity to … gain the same benefit."); *Segal v. Metropolitan Council*, 29 F.4th

399, 406 (8th Cir. 2022) ("the term 'meaningful access' has its common and

ordinary understanding, signifying access to services by disabled individuals that is

substantially equal to the services provided to non-disabled persons."); *Durand v.*

*Fairview Health Servs.*, 902 F.3d 836, 842 (8th Cir. 2018) ("The meaningful access

standard requires entities to provide hearing-impaired individuals with 'an equal

opportunity to gain the same benefit' as their hearing-abled peers."); *Nat'l Fed'n of*

*the Blind v. Lamone*, 813 F.3d 494, 507 (4th Cir. 2016) (defendants failed to

---

[9] *Accord L.E. v. Superintendent of Cobb Cty. Sch. Dist*., 55 F.4th 1296, 1303 (11th Cir. 2022) (reversing district court's ruling that virtual schooling complied with the ADA because it provided student with "meaningful access to education," and directing court to analyze whether virtual school is a reasonable accommodation for in-person schooling, not education in general, and if not, to consider COVID precautions as a reasonable accommodation); *Liese v. Indian River Cty. Hosp. Dist*., 701 F.3d 334, 343 (11th Cir. 2012) ("[T]he proper inquiry is whether the auxiliary aid that a hospital provided to its hearing-impaired patient gave that patient an equal opportunity to benefit from the hospital's treatment."); *Silva v. Baptist Health S. Fla., Inc*., 856 F.3d 824, 834 (11th Cir. 2017) ("The ADA and RA focus not on quality of medical care or the ultimate treatment outcomes, but on the equal opportunity to participate in obtaining and utilizing services.").

provide meaningful access when it failed to "[e]nsur[e] that disabled individuals are afforded an opportunity to participate in voting that is equal to that afforded others."); *Disabled in Action v. Bd. of Elections*, 752 F.3d 189, 199 (2d Cir. 2014) (plaintiffs denied "meaningful access" when denied the option to cast a private ballot on election days: "[T]o assume the benefit is anything less – such as merely the opportunity to vote at some time and in some way – would render meaningless the mandate that public entities may not 'afford[ ] persons with disabilities services that are not equal to that afforded others.'").[10]

Here, the disabled Plaintiffs and organizational members, who can only park in blue spaces, allege substantial difficulty when parking compared to nondisabled people who can use standard parking spots. Dkt. No. 40 at ¶¶ 13-14, 23-24, 30-38, 43-81. The new law is making it concretely harder for these Plaintiffs and members to access blue spaces. The new law is causing additional delay, inconvenience, isolation, frustration, anxiety, embarrassment, wasted time, disappointment, and feelings of exclusion, among other harms. *Id.* at ¶¶ 24, 30-38, 43-81. The disabled Plaintiffs and members must search longer for parking, and park farther away than

---

[10] *Accord Lartigue v. Northside Indep. Sch. Dist.*, 100 F.4th 510, 520 (5th Cir. 2024) ("the ADA requires public entities to provide equal opportunities to disabled and non-disabled individuals."); *American Council of the Blind of Metropolitan Chicago v. City of Chicago*, 667 F. Supp. 3d 767, 776 (N.D. Ill. 2023) (defining meaningful access as "access to services that is substantially equal to the services provided to non-disabled persons," requiring "evenhanded treatment" between disabled and non-disabled individuals).

is safe and accessible for them. *Id.* at ¶¶ 30-38, 48-49, 56-58, 72-74. They abandon their trips altogether. *Id.* at ¶¶ 24, 31-37, 58-66, 68, 74, 81. They are forced to exit into the driving lane (if someone else is with them who can assist), a dangerous and inconvenient maneuver. *Id.* at ¶¶ 32-37, 59-66, 75-78. Services that are not safe for people with disabilities deny meaningful access. *Cadena v. El Paso Cty.*, 946 F.3d 717, 725 (5th Cir. 2020) ("[A] jury could find that crutches did not provide Cadena with meaningful access to the County's services, in part because she could not safely ambulate within the facility on crutches."). The allegations describe a denial of meaningful access.

### C.     Plaintiffs State a Claim For Denial of Reasonable Modification in Violation of the ADA

Unlawful disability discrimination by a public entity under Title II of the ADA includes refusing to make reasonable modifications in policies, practices, or procedures, as needed to ensure that people with disabilities have equal access to programs. 28 C.F.R. § 35.130(b)(7). Plaintiffs and members here seek reasonable modification to Section 320.0849: people with EMPPs should be permitted to park only in spaces designated specifically for pregnancy, and not in accessible disability spaces reserved for people with disabilities and regulated by the ADA. *See* Dkt. No. 40 at ¶¶ 50, 67, 80, 90, 95. Defendants have refused to modify the law. Plaintiffs have stated a claim for failure to provide reasonable modification in violation of the ADA.

**D.** **Plaintiffs State a Claim for Interference in Violation of the ADA**

The ADA makes it unlawful to "interfere with any individual in the exercise or enjoyment of … any right granted or protected by this chapter." 42 U.S.C. § 12203(b). Defendants are interfering with Plaintiffs' rights by issuing thousands of one-year EMPPs on the basis of pregnancy and not disability. As a result of Defendants' interference, Plaintiffs are injured and denied the benefits of the federally regulated accessible parking program.

Defendants cite three cases against Plaintiffs' interference claim. Dkt. No. 42 at pp. 26-27. In *Post v. Trinity Health-Michigan*, 44 F.4th 572, 578 (6th Cir. 2022), the Sixth Circuit held that the proper defendant for the interference provision depends upon the context and must be a covered entity set out in prior titles of the ADA. *Id.* at 578; *see also id.* at 576 (in the employment setting, interference provision authorizes suits only against employers). Here, Defendants are properly covered entities under Title II of the ADA.

Defendants also cite to *Kelly v. Town of Abingdon, Virginia*, 90 F.4th 158, 171-172 (4th Cir. 2024) and *Brown v. City of Tucson*, 336 F.3d 1181, 1192 (9th Cir. 2003). These employment cases hold that interference "is broader than retaliation, and captures 'all practices which have the effect of interfering with the exercise of rights' under the ADA" but is not "so broad as to prohibit 'any action whatsoever that in any way hinders a member of a protected class.'" *Kelly*, 90

29

F.4th at 171 (quoting *Brown*, 336 F.3d at 1191-92).[11] Plaintiffs' interference claim falls comfortably within this boundary.

The Eleventh Circuit has not substantively analyzed the ADA's anti-interference provision. *Atchison v. Bd. of Regents of the Univ. Sys. of Ga.*, 802 F. App'x 495, 508 (11th Cir. 2020). Nor have the Defendants. The court is "not under an obligation to distill and develop Defendant's Motion to Dismiss argument for Defendant." *Holland v. Sebelius*, 51 F. Supp. 3d 1357, 1373 (N.D. Ga. 2014) (collecting cases); *see also U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (holding that "perfunctory and underdeveloped" arguments are waived). Regardless, Defendants' perfunctory arguments fail. Plaintiffs sufficiently allege a causal nexus between Defendants' actions and the alleged interference of their rights. Dkt. No. 40 at ¶¶ 21-25, 30-42, 49, 58-65. 74-77, 86-87.

### III.    Plaintiffs Properly Allege that Section 320.0849 is Preempted by the ADA

The Eleventh Circuit has found the ADA preempts state law when the two conflict. In *Campbell v. Universal City Dev. Partners, Ltd.*, a water park operator barred a disabled patron from a ride, citing compliance with state law safety regulations. 72 F.4th 1245, 1248-50 (11th Cir. 2023). The *Campbell* court rejected

---

[11] In *Kelly*, the plaintiff's claim failed as he made no allegation that the defendant acted to prevent him from exercising his rights. *Kelly*, 90 F.4th at 171. In *Brown*, the court concluded it was "spared the difficulty of defining precisely what constitutes 'interference,'" *Brown*, 336 F.3d at 1192, providing little guidance here.

the defendant's argument that it could rely on state safety regulations in violation of the ADA, holding that "a state law at odds with a valid Act of Congress is no law at all." *Id.* at 1257 (quoting *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1234 (10th Cir. 2009) (Gorsuch, J., concurring in the judgment)). If state law carved out an exception to the ADA, "then any state could unilaterally nullify the ADA by enacting a state law requiring discrimination. That can't be right." *Id*. at 1258. The same is true here. Defendants are discriminating against Plaintiffs through a state law preempted by the ADA.

Numerous cases hold that preemption is properly invoked when plaintiffs are injured and denied their rights under federal law as a result of the enforcement or operation of a state law. *Id.* at 1257; *Nat'l Educ. Ass'n-New Hampshire v. NH Att'y Gen*., 806 F. Supp. 3d 166, 205 (D.N.H. 2025) (holding that state law forbidding preferential treatment of people with disabilities was preempted by the ADA, Section 504, and the Individuals with Disabilities Education Act (IDEA): "simultaneous compliance with the federal and state laws is impossible, rendering the state laws preempted."); *Sims v. State of Fla., Dep't of Highway Safety & Motor Vehicles*, 862 F.2d 1449, 1455 (11th Cir. 1989) (holding that state law governing titling and registration of certain cars implemented by FLHSMV was preempted by federal law); *Browning*, 522 F.3d 1153, 1167-72 (11th Cir. 2008) (affirming plaintiffs' standing to challenge state law allegedly preempted by

31

federal Help America Vote Act). The plaintiff need not allege that they are "subject to enforcement" of the state law. *Cf.* Dkt. No. 42 at p. 28.[12]

Section 320.0849 "must yield" where it conflicts with the ADA. *See Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992). The benefit and purpose of blue spaces and their respective permits is obvious: to afford individuals with disabilities "equality of opportunity, full participation, independent living, and economic self-sufficiency" by making parking facilities accessible. 42 U.S.C. § 12101(a)(7). Section 320.0849 denies disabled individuals this benefit by permitting nondisabled individuals to take away these spaces and thus conflicts with the ADA. Plaintiffs properly allege preemption.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss the Second Amended Complaint.

---

[12] Defendants cite *Upside Foods Inc. v. Comm'r., Fla. Dep't. of Agric. & Cons. Servs.*, 171 F.4th 1239 (11th Cir. 2026), for this proposition. Dkt. No. 42 at p. 28. This case does not stand for the proposition asserted. In *Upside Foods Inc.*, the plaintiff challenged Florida's ban on lab-grown meat, arguing the ban was preempted by a federal statute. 171 F.4th at 1244-46. The court upheld the denial of a preliminary injunction, reasoning that the state law ban fell outside the scope of the federal law. *See id.* at 1254-1255 (describing distinctions between state law regulation and federal law regulation). The case did not turn on whether the plaintiffs were "subject to enforcement" or not. In any event, these are not the facts here. Here, the state law is in direct conflict with the federal scheme.

Respectfully submitted,

/s/ Claudia Center
Claudia Center*
Jinny Kim*
Peter Talkington*
Disability Rights Education
and Defense Fund
3075 Adeline Street, Suite 210
Berkeley, CA 94703
(510) 644-2555
ccenter@dredf.org
jkim@dredf.org
ptalkington@dredf.org

James M. Slater (FBN 111779)
Slater Legal PLLC
2296 Henderson Mill Rd NE #116
Atlanta, GA 30345
(404) 458-7283
james@slater.legal

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

33